542 So.2d 814 (1989)
Louis CORMIER and State Farm Mutual Automobile Insurance Company Plaintiffs-Appellants,
v.
Leonard HABETZ and Louisiana Farm Bureau Casualty Insurance Defendants-Appellees.
No. 88-20.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*815 Melissa J. Reardon, Lafayette, for plaintiffs-appellants.
Edwards, Stefanski, Barousse, Cunningham, Stefanski & Zaunbrecher, Nolan G. Edwards, Reggie, Harrington & Boswell, Gregory F. Reggie, Crowley, for defendants-appellees.
Before DOMENGEAUX, LABORDE and KNOLL, JJ.
KNOLL, Judge.
This appeal concerns an automobile accident which occurred when Gladys Cormier, wife of Louis Cormier, attempted a passing maneuver around a vehicle driven by Leonard Habetz, who was attempting to turn left into a private driveway. Louis Cormier and his insurer, State Farm Mutual Automobile Insurance Company (hereafter State Farm), sued Habetz and his insurer, Louisiana Farm Bureau Casualty Insurance Company (hereafter Farm Bureau), for damages, and in a separate suit Habetz and Farm Bureau likewise sued Mrs. Cormier. These cases were consolidated for trial and have also been consolidated on appeal. Although we decide all issues presented in both appeals in this opinion, we shall render a separate judgment in Habetz v. Cormier, 542 So.2d 819 (La.App. 3rd Cir.1989).
The Cormiers and State Farm appeal the judgment of the trial court which found Mrs. Cormier 100% at fault in causing the accident. The trial court granted Habetz judgment against State Farm and Mrs. Cormier, in solido, for $3,153.95, and dismissed *816 the damage claim of State Farm and Louis Cormier against Habetz and Farm Bureau.
The Cormiers and State Farm contend that the trial court erred: (1) in its allocation of 100% fault to Mrs. Cormier; (2) in permitting Habetz to recover property damages for a truck he did not own; (3) in awarding Habetz property damages when he failed to prove the amount of damages to the truck; and, (4) in awarding Habetz damages for personal injury when he failed to prove his case by a preponderance of the evidence.
In furtherance of their second assignment of error the Cormiers and State Farm filed a peremptory exception of no right of action in this court.

FACTS
This accident occurred on U.S. Highway 90, a paved, two lane, undivided highway, approximately two-tenths of a mile east of Crowley, Louisiana, at approximately 12:00 noon on a clear day on Tuesday, April 2, 1985. Habetz, driving a 1973 Chevrolet one ton truck owned by Habetz Enterprises, Inc., was travelling in an easterly direction in the eastbound lane of U.S. 90, and was turning left into the private driveway of the John Deere Tractor dealership when the accident occurred. Mrs. Cormier, driving her 1979 Cadillac, was also travelling in an easterly direction in the eastbound lane of U.S. 90. According to Mrs. Cormier's testimony, she was following Habetz for approximately 300 feet and did not observe any indication that the Habetz vehicle was executing a left turn. Mrs. Cormier activated her turn indicator, pulled into the passing lane, and was passing Habetz when Habetz executed a left-hand turn. A collision resulted. Habetz contends that he had his left turn indicator on and his arm out to indicate a left turn.
The Cormier automobile was damaged on the passenger side, just behind the right front tire, and at the front right of the vehicle. The truck Habetz was driving was damaged at the driver's door.
It was stipulated that Louis Cormier was the owner of the vehicle driven by Mrs. Cormier, that State Farm paid $4,405.95 to repair the damages to the Cormier vehicle, and that Mr. Cormier paid his $100 deductible. Accordingly, should Habetz be found liable, it was undisputed that State Farm and Cormier were entitled to subrogation in that amount. The record further reflects that Mrs. Cormier testified that she had permission to drive the automobile, and that State Farm insured the vehicle at the time of the accident.
The record shows that the Habetz vehicle was owned by Habetz Enterprises, Inc., and Habetz claimed that he had a verbal lease with the corporation to use the truck as long as he paid for the vehicle's upkeep and for any damages to the truck. The record also reflects that Habetz secured liability insurance on the truck with Farm Bureau.

ALLOCATION OF FAULT
The Cormiers and State Farm contend that the trial court erred in assessing all the fault for the accident to Mrs. Cormier. We agree.
Louisiana jurisprudence confirms the statutory law by holding that both the left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers. Harris v. Aetna Ins. Co., 509 So.2d 486 (La.App. 3rd Cir. 1987).
The Cormiers and State Farm first contend that the trial court was manifestly erroneous in its factual conclusion that Habetz signaled that he was making a left turn. Habetz testified that he signaled his turn mechanically and at least 100 feet prior to his turn he also manually signaled his turn by extending his arm through the window on the driver's side of the vehicle. Mrs. Cormier's testimony is diametrically opposed to Habetz'. It is axiomatic that the trial court's factual determinations will not be disturbed on appeal unless they are clearly wrong. After thoroughly reviewing the testimonies of both drivers, we can not say that the trial court's resolution of *817 this factual dispute in favor of Habetz was clearly wrong.
The Cormiers and State Farm next contend that the undisputed evidence established that Habetz did not determine prior to turning that his movement to the left could be made with reasonable safety as required by LSA-R.S. 32:104.
In Attales v. Shelter Mut. Ins. Co., 488 So.2d 474, at page 476 (La.App. 3rd Cir. 1986), we stated:
"A left turn is generally a dangerous maneuver which must not be undertaken until the turning motorist ascertains that the turn can be made in safety. A left-turning motorist involved in an accident is burdened with a presumption of liability and the motorist must show that he is free of negligence." (Citations omitted).
Habetz testified that he activated his left turn indicator when he was 150-250 feet from the John Deere driveway. He further stated that when he saw Mrs. Cormier approaching, she was coming pretty fast so he stuck his left arm out the window to also signal his turn because he thought either his turn indicator was possibly not working or his turn lights may have been mud-covered. Habetz stated that the last time he looked through his rearview mirror was when he stuck his left arm out the window, i.e., about 100 feet before he began his left turn. He also stated that he slowed his truck to make his turn.
Mrs. Cormier testified that while she was following Habetz, both she and Habetz were travelling at 30-35 miles per hour before she began to pass him. She further stated that she speeded up to 40-45 miles per hour to pass Habetz, and was in the passing lane for a few seconds before the accident occurred.
Reviewing the foregoing testimony in light of the statutory law and its interpretative jurisprudence, it is apparent that by failing to further check approaching traffic from the rear after first checking 100 feet prior to his turn, Habetz failed in his duty to observe following traffic to ascertain that the turn could be safely made, particularly since he had earlier observed Mrs. Cormier approaching rapidly in his lane of travel. Attales, supra at page 476. Accordingly, we find that the trial court erred in failing to find Habetz negligent and that his negligence was a cause in fact of the accident. Therefore, we find that the trial court erred when it did not cast Habetz partially at fault.
In making this determination we reaffirm this circuit's statement in Hudgens v. Mayeaux, 143 So.2d 606 (La.App. 3rd Cir. 1962), that a left-turning motorist is not required to maintain a continuous observation to his rear. However, in the case sub judice, our determination adverse to Habetz turns on the fact that he made no observation to the rear anytime after his vehicle was 100 feet from the point that he wished to turn. It is on this same fact that we distinguish Harris supra, and Shellins v. Colar, 464 So.2d 894 (La.App. 4th Cir. 1985). In Harris the left-turning motorist was not found negligent because he looked to his rear immediately before beginning his turn and saw an approaching vehicle following in his lane of travel. Also in Shellins there was no negligence found when the left-turning driver looked to his rear immediately before he attempted his turn.
At the same time, we can not say that Mrs. Cormier was free from fault. Assuming that Habetz engaged his turn signal and utilized a hand signal, factual conclusions determined above to be supported by the record and not clearly wrong, Mrs. Cormier failed to observe these signals and to notice that Habetz was preparing to turn. If Mrs. Cormier had been keeping a proper lookout and observing the traffic, she should have had some notice of impending danger.
Comparative fault requires the allocation of a percentage of fault to the responsible parties. In making this allocation of fault, we must consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages. Attales, supra at page 476, and cases cited therein.
Applying these principles to the case at hand, we find that the negligence of Mrs. *818 Cormier and Habetz equally caused the accident. Therefore, we conclude that fault should be apportioned 50% to Mrs. Cormier and 50% to Habetz.

HABETZ' PROPERTY DAMAGE
The Cormiers and State Farm contend that since Habetz was not the owner of the truck, he did not have a right of action against Mrs. Cormier and State Farm to recover for the damages to the truck.
The record establishes, and it is not disputed, that Habetz Enterprises, Inc., a closely held corporation comprised of Habetz, his brother, and his brother's wife, is the titled owner of the truck Habetz was driving. At trial Habetz testified that the corporation owned the truck but that he had "a verbal agreement with ... [his] brother with the corporation where [he] maintain it [the truck], keep it in good working condition, insure it, gas it, and everything else." Habetz further testified that he was responsible to Habetz Enterprises, Inc. for all damages to the vehicle. No one from Habetz Enterprises corroborated Habetz' testimony about the verbal lease.
A contract of lease may be either written or verbal. LSA-C.C. Art. 2683. Proof of a verbal lease may be shown by the testimony of witnesses; the testimony of one witness and the production of a rent receipt for a part of the rent has been held sufficient to establish a lease. Brandagee v. Fernandez, 1 Rob. 260 (La.1842).
In the case sub judice, there was no testimony of how often Habetz used the truck, or how long this agreement had been in existence. Likewise, the record is void of any testimony of how much money Habetz spent maintaining the truck in good working order. In fact, the only evidence of consideration paid by Habetz was the insurance policy he produced which showed that there was liability and uninsured motorist insurance coverage of $100,000/300,000 on the truck which was obtained by him at an annual premium of $92.12; there was no collision coverage on the truck. We find the evidence too scant to support a verbal lease of the truck.
Assuming arguendo that there was sufficient evidence to establish the existence of a verbal lease, we find that the testimony was insufficient to establish that Habetz also had the right to recover from the Cormiers for truck damages. Since Habetz Enterprises was the record owner of the vehicle it was incumbent upon Habetz to establish by a preponderance of the evidence that the corporation had transferred to Habetz its right as owner to be paid for the damages. After thoroughly examining the evidence, we find that the record is void of any evidence to this effect. Accordingly, we find that the exception of no right of action filed by the Cormiers and their insurer in this court has merit. Therefore, we shall sustain the peremptory exception of no right of action, and reverse that portion of the trial court judgment which awarded Habetz judgment for the damages which Habetz Enterprises' truck received in the collision.

QUANTUM
The Cormiers and State Farm next contend that the trial court erred in awarding Habetz $1,000 damages for personal injury. They argue that this damage award is excessive, particularly since Habetz' treating physician, Dr. H.L. Gardiner, Jr., did not testify.
In reviewing an award of damages to determine whether it is inadequate or excessive, the appellate court must look at the individual circumstances of the case before it. Only after a close analysis of the facts reveals a clear abuse of discretion of the trier of fact may the award of damages be altered. Reck v. Stevens, 373 So. 2d 498 (La.1979).
In the case sub judice, Habetz testified that on the morning following the accident he consulted Dr. Gardiner because he felt pain in his neck and elbow. Habetz was seen by Dr. Gardiner one time. As a result of Dr. Gardiner's examination Habetz had a cervical x-ray and he received a prescriptive drug; the record does not establish what the x-ray diagnosis was or for what *819 the medication was prescribed. Habetz testified that he stayed home for two weeks, mostly in bed, and that during that time he ventured outside once or twice, and then only with the assistance of his wife. He described his injuries as painful, but that there has been no recurrence of pain since his two week convalescence. Habetz itemized his medical expenses as follows: Dr. Gardiner$20; Acadian Laboratory $40; and Gremillion's Drug Store$25.95. Although we find the evidence was slight in proving Habetz' injuries, we can not say the trial court clearly abused its discretion in fixing damages at $1,000.
For the foregoing reasons, we reverse the trial court's judgment finding that Mrs. Cormier was 100% at fault for causing this accident, and in awarding Habetz and Farm Bureau $2,687 for the property damages to the truck owned by Habetz Enterprises, Inc. We affirm the $1,000 award to Habetz for his injuries. Accordingly, the judgment of the trial court is hereby recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of State Farm Mutual Automobile Insurance Company and against Leonard Habetz and Louisiana Farm Bureau Casually Insurance Company, jointly and in solido, in the sum of $2,202.98 (being 50% of $4,405 for the property damages to the Cormier vehicle), with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Louis Cormier against Leonard Habetz and Louisiana Farm Bureau Casualty Insurance Company, jointly and in solido, in the sum of $50 (being 50% of his $100 deductible), with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Leonard Habetz and Louisiana Farm Bureau Casualty Insurance Company against Gladys Cormier in the sum of $542.98 (being 50% of: general damages of $1,000, and $85.95 for medical expenses), together with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgment of the trial court which awarded Leonard Habetz property damages for the truck owned by Habetz Enterprises, Inc. is reversed and set aside, and the peremptory exception of no right of action filed by Louis Cormier and State Farm Mutual Insurance Company is sustained, dismissing the property damage claim of Leonard Habetz against Louis Cormier and State Farm Mutual Insurance Company with prejudice.
Costs of the trial court and this appeal are assessed one-half to Louis Cormier and State Farm Mutual Insurance Company, and one-half to Leonard Habetz and Louisiana Farm Bureau Casualty Insurance Company.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART AND RENDERED.