610 So.2d 177 (1992)
Merlene NEAL and Morris Neal, Plaintiffs-Appellees,
v.
HIGHLANDS INSURANCE COMPANY, et al., Defendants-Appellants.
No. 91-1344.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
Writ Denied February 11, 1993.
*178 Jack F. Owens, Jr., Harrisonburg, for plaintiffs-appellees.
Howard B. Gist, III, Alexandria, for defendants-appellants.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
This appeal concerns the propriety of a judgment notwithstanding the verdict (JNOV) which apportioned fault in an automobile collision that occurred when a vehicle attempted to pass a left-turning vehicle.
Highlands Insurance Company (Highlands) and its insured, Stephen B. Newman (Newman), the driver of the passing vehicle, appeal the trial court's grant of a motion for JNOV filed by Merlene Neal, the driver of the left-turning vehicle. After the jury returned a verdict, finding Neal totally at fault in this automobile accident, the trial court granted Neal's motion for JNOV, assessed fault 60% to Neal and 40% to Newman. It then awarded damages to Neal in the amount of $23,341.64. In accordance with LSA-C.C.P. Art. 1811(C)(2), the trial court alternatively granted Neal's motion for new trial should the JNOV be reversed on appeal.
Newman and Highlands appeal, contending that: (1) the trial court erred in granting the JNOV; and, alternatively, (2) the trial court was manifestly erroneous in its allocation of fault and its assessment of damages. We affirm.

FACTS
Neal was driving her automobile north on Louisiana Highway 124, the main highway between Jonesville and Harrisonburg. La. 124 is straight and has a posted speed limit of 55 miles per hour in the area. At the time of the accident, Neal testified that she was driving slowly with intentions of turning left into a private driveway, because she had forgotten to purchase something at the grocery store and had to return to Jonesville to make the purchase.
Shortly before the accident, Newman and his family were traveling from south Louisiana en route to their home town in Winnsboro. Newman stated that he first saw the Neal vehicle when he and his family were stopped at a roadside park just north of Jonesville. Following the Neal vehicle was a pickup truck later identified as belonging to Bud Ricks. After Neal and Ricks passed Newman at the roadside park, Newman testified that he entered the highway traveling north in the same direction as Neal and Ricks, headed toward Harrisonburg.
Approximately one-half mile north of Jonesville, the Ricks' pickup truck passed the Neal vehicle. As Newman, who was traveling at approximately forty to forty-five miles per hour, approached the rear of the slow moving Neal vehicle, he began to pass the Neal vehicle. Just as Newman began his passing maneuver, the Neal vehicle executed a left-hand turn into a private driveway. At this point, the Newman vehicle collided with Neal's automobile, striking it on the left rear quarter panel.

JUDGMENT NOTWITHSTANDING THE VERDICT
Highlands and Newman contend that the trial court improperly granted Neal's motion for JNOV. They argue that reasonable men and women could have reached a decision consistent with the jury verdict. They further argue that the trial court made credibility determinations in its assessment of the evidence which are not *179 permitted when considering the appropriateness of a motion for JNOV.
In Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148, 1151 (La.App. 1st Cir.1990), the appellate court stated:
"A trial court may grant a JNOV only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach a contrary verdict. If there is substantial evidence opposed to the motion: i.e. evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion must be denied. In considering a motion for JNOV, the trial court must construe all evidence and reasonable inferences to be made therefrom in favor of the party opposing the motion. Further, the trial court may not weigh the evidence, pass on credibility of witnesses or substitute its own judgment for that of the jury. Basically, a JNOV can be granted by a trial court only when a jury's verdict is one which reasonable men could not have rendered. The standard to be applied by appellate courts in reviewing the grant of a JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous." (Citations omitted.)
In ruling on Neal's motion for JNOV in the present case, the trial court stated:
"I'm going to find liability of the trailing vehicle [Newman] here. I think that there was some responsibility of that vehicle, first to keep a lookout for a slow moving vehicle [Neal's automobile], and further, there is thethis is in considering there is no blinkerassuming that there is no blinker.
* * * * * *
I think the Jury disregarded the ... clear responsibility of the trailing vehicle to keep a sharp lookout, and when making a passing maneuver to do more thanespecially in that situation to sound the horn or do something that would ... execute a blinker, pass cautiously, and I don't think that happened here."
Contrary to defendants' assertions, the trial court's oral reasons make it clear that it did not make credibility determinations regarding the issue of whether Neal activated her turn signal. The trial court, viewing the evidence in a light which favored Highlands and Newman, analyzed the evidence on the assumption that Neal did not signal her left-hand turn. Having eliminated this preliminary procedural problem, we now focus our attention on the trial court's determination that the jury disregarded the duty of Newman, the overtaking and passing motorist.
Louisiana jurisprudence confirms the statutory law by holding that both the left-turning motorist and the overtaking and passing motorist must exercise a high degree of care because they are engaged in dangerous maneuvers. Cormier v. Habetz, 542 So.2d 814 (La.App. 3rd Cir.1989).
Summarizing the law applicable to the drivers herein, our brethren of the First Circuit stated in Walton v. Bellard, 581 So.2d 307, 310 (La.App. 1st Cir.1991), writ denied, 585 So.2d 567 (La.1991):
"The law sets forth the duties imposed on a left turning driver as well as a passing driver. The duties imposed upon the plaintiff, a left turning motorist, are found in La.R.S. 32:104. The plaintiff was required to give a signal of her intent to make a left turn at least 100 feet before reaching the private driveway. In addition to giving the proper signal, the plaintiff is required to make a proper observation that the turn can be made without endangering a passing vehicle. Bamburg v. Nelson, 313 So.2d 872, 875 (La.App. 2nd Cir.), writ denied, 318 So.2d 57 (La.1975). The plaintiff's failure to meet these duties does not automatically absolve the defendant from liability.
The law equally imposes a duty upon the passing motorist. This duty is specifically set forth in La.R.S. 32:73 and 75. A passing driver is not automatically required to sound his horn when executing a passing maneuver. The statute simply mandates that the passing driver sound his horn when the circumstances dictate *180 that it is reasonably necessary for safe execution of a passing maneuver. In other words, the facts of a case dictate whether the passing driver had a duty to sound his horn. Doucet v. Ryder Truck Rental, Inc., 415 So.2d 618, 620 (La.App. 3rd Cir.1982).
Generally, a passing driver does not have a duty to give an audible signal when the preceding vehicle is occupying its own lane of traffic, though traveling slowly. Soileau v. Hanover Insurance Company, 232 So.2d 128, 130 (La.App. 3rd Cir. 1970). The purpose of sounding the horn is to warn the overtaken driver to give the passing driver necessary clearance in which to complete his pass. The purpose of this duty is not to warn the overtaken driver not to turn left. Barber v. Sumrall, 206 So.2d 560, 561-562 (La.App. 1st Cir.1968).
In Hall v. Jackson, 215 So.2d 367, 369 (La.App. 2nd Cir.1968), the court held that the driver who was following a slow moving vehicle was entitled to pass where the preceding driver had not signaled his intent to make a left turn. It is unreasonable to require the following driver to anticipate that the preceding driver will make a left turn into an obscure private driveway based on the mere fact that the preceding vehicle was traveling slowly. Barber v. Sumrall, 206 So.2d [at] 562."
In the case sub judice, the record shows that Ricks passed the slow moving Neal vehicle just before Newman began his passing maneuver. Ricks testified that although Neal was traveling slowly, she meandered toward the center line of the highway as he was passing her, and jerked her automobile to the right when she saw Ricks parallel to her in the passing lane.[1] Ricks stated that he swerved onto the left shoulder because he thought Neal was beginning a left-hand turn.
Newman testified that after Ricks began his passing maneuver, he immediately began looking ahead of Neal. He stated that his concern was for oncoming traffic which would prohibit his passing maneuver. He gave no testimony that he observed Ricks as he swerved onto the shoulder of the road to avoid the Neal vehicle.
In finding Newman partially liable for the accident, the trial court premised liability on Newman's failure to maintain a sharp lookout, and in failing to sound his horn or engage his blinker which would have further alerted Neal of his passing maneuver.
For the foregoing reasons, we find that reasonable men could not have disregarded the strong, unrefuted evidence regarding the evasive action taken by Ricks immediately prior to Neal's initiation of his passing maneuver. Based on the near miss that Ricks had when the Neal vehicle approached the center line, reasonable men could only conclude that Newman could no longer presume that Neal would proceed on the highway without turning. Accordingly, reasonable minds could not have concluded other than that Newman should have taken additional action before passing Neal.
Therefore, we find no manifest error in the trial court's granting of Neal's JNOV.

ASSESSMENT OF FAULT
Highlands and Newman next contend that the trial court erred in assessing 40% fault to Newman. They argue that Newman had every right to expect that Neal would proceed on the highway without making a left-hand turn, and that he had a right to pass the slow moving Neal vehicle. Because the jury never reached the issue of apportionment of fault, the stringent, reasonable mind standard of JNOV is inapplicable to this issue.
It is clear that before an appellate court can disturb a trial court's allocation of fault, we must find that the trial court's determination was manifestly erroneous. Based on the elaboration of facts enunciated hereinabove, we cannot say that the *181 trial court erred in assessing 40% fault to Newman. Newman clearly failed to maintain a proper lookout as required by law, and neither engaged his blinker or blew his horn to warn the Neal vehicle that he was passing.

QUANTUM
Highlands and Newman contend that the trial court's $45,000 award for general damages and $7,000 for future medical expenses constituted an abuse of discretion. Because of the different analysis employed in the evaluation of these awards, we will first address the general damage award and then the provision made for future medical expenses.
Before a trial court award for general damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. A damage award should not be disturbed by a reviewing court absent a showing of a clear abuse of the discretion vested in the trial court. Ferguson v. Village of Dry Prong, 580 So.2d 1015 (La.App. 3rd Cir.1991), writ denied, 585 So.2d 570 (La. 1991). On appeal, the court's function is not to determine whether a different award might have been more appropriate, but whether the award by the trial court is reasonably supported by the record and justifiable inferences from the evidence. Id.
Dr. Charles Passman, a general practitioner, examined Neal on April 5, 1988, four days after the automobile accident. His medical history reflected that although Neal did not initially think that she had been injured, the day following the accident she was seen in the Riverland Hospital Emergency Room. X rays of her cervical spine were negative; however, she was diagnosed as having suffered a musculoskeletal strain. She was given muscle relaxants for this complaint.
When Dr. Passman first examined Neal, she complained additionally of low back pain. Her physical findings were primarily tenderness over the paraspinal muscles of the lumbar area with continued pain in the neck. His initial diagnosis was acute lumbar sprain as well as possible cervical strain.
Dr. Passman next saw Neal a week and two weeks later. At those times, Neal told Dr. Passman that she was better, but that activity aggravated her symptoms. At this point she was referred to an orthopedist for a more detailed examination.
Neal was next treated by Dr. David Ball, an orthopedist, on May 11, 1988, primarily for complaints of severe low back pain. X rays were normal, except that they did show that Neal had a narrowing of the L-5, S-1 disc space; the evidence preponderates that Dr. Ball's opinion was that this narrowing pre-existed the accident, but that the accident aggravated the condition. Dr. Ball's diagnosis was that Neal suffered an acute lumbar strain as a result of her auto accident.
Dr. Ball next saw Neal on July 17, 1989. At that time Neal advised Dr. Ball that in the intervening months she had been treated at Louisiana Charity Hospital in Pineville. There, a CT scan and X rays of her lower back were taken. Reading from a copy of Charity's CT scan report, Dr. Ball testified that Neal had disc bulging at the L3-4 and L4-5 levels.
Neal was seen by Dr. Ball again on March 16, 1990 and April 24, 1990, still complaining of low back pain. Dr. Ball stated that Neal was unable to have further diagnostic work done because she did not have the funds to complete the tests.
Subsequent visits with Dr. Ball on April 30, May 29, and October 3, 1990, produced evidence of Neal's continued low back pain. He opined that Neal suffered an injury to the lumbar disc which continued to produce pain in her back caused by the irritated disc. He assigned Neal a 10% permanent partial whole-body disability rating, and commented that her pain was chronic and progressive.
Based on the record before us, we cannot say that the trial court's damage assessment was manifestly erroneous. Neal's low back pain has been chronic, and any *182 preexisting disc problem she had, was aggravated as a result of the accident.
Highlands and Newman next contend that the trial court's award of $7,000 for future medical expenses is not supported by the record.
Future medical expenses, like any other damages, must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. An award for future medical expenses cannot be based on mere speculation. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award. Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5 (La.App. 3rd Cir.1991).
Dr. Ball repeatedly referred to the fact that he was unable to fully evaluate Neal because of her inability to pay for the diagnostic tests required. He opined that only with a comprehensive program of hospitalization and repeat X rays, a MRI scan, and physical therapy could he evaluate Neal and recommend further treatment. Dr. Ball estimated that this would cost between $7,000 to $10,000.
Based on the record developed in the trial court, we cannot say that the trial court abused its discretion in awarding the lower estimate of Dr. Ball.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Highlands and Newman.
AFFIRMED.
DOMENGEAUX, C.J., dissents and assigns reasons.
DOMENGEAUX, Chief Judge, dissenting.
Whether a left turning vehicle which comes into contact with a passing vehicle is not at fault, partially at fault, or fully at fault, is a factual question. The same holds true in determining the fault or lack of fault status of the passing vehicle. Each case depends upon its own facts. The cases are legion in our jurisprudence concerning left turn-passing vehicle situations, and the respective duties of the drivers of these vehicles.
The cases are also legion on the question of the granting or denying of a JNOV. Starting with the case of Campbell v. Mouton, 373 So.2d 237 (La.1979), the standard for the application of a JNOV was enunciated. It has been followed by many cases, including the Hutchinson v. Wal-Mart, Inc., case cited in the majority opinion. As was said in the case of Romero v. Emerson Electric Company, 583 So.2d 544 (La. App. 3d Cir.1991):
It is clear that in applying the standard of proof which the trial court should use in deciding the motion for J.N.O.V., it may not pass on the credibility of the witnesses or substitute its reasonable inferences of the facts for those of the jury. (Emphasis added.)
I respectfully submit that in this case, the trial judge obviously passed on the credibility of the witnesses and substituted his reasonable inferences of the facts for those of the jury. The question of whether Mrs. Neal's left turn blinkers were on was a fact to be determined by the jury. Obviously, the judge violated the credibility rule by inferring that the left hand blinkers were on, contrary to what the jury may have thought.
Another example is the trial judge's comment concerning whether or not a so-called eye witness, Mr. Watson, could have seen whether the blinker was on. Credibility was involved. The jury obviously felt that Mr. Watson could not have seen whether the blinker was on or not. Further, the trial judge concluded that the jury disregarded what he thought should have been the passing vehicle's responsibility. There is no evidence that the jury didn't consider the passing vehicle's actions or lack thereof.
The trial judge's comments about the actions of the passing vehicle were purely speculative, not borne out by the evidence, and obviously contrary to what the jury thought.
*183 I can come to no other conclusion but that the trial judge took this case away from the jury and decided it himself contrary to the recognized standard for granting a JNOV. By affirming the trial judge, I respectfully suggest that we are compounding his error.
I would reverse the judgment of the district court and reinstate the jury verdict.
NOTES
[1] Later during his testimony, Ricks more forcefully stated that as he was passing the Neal vehicle, her automobile crossed the center line into his lane of travel. However, viewing the evidence most favorably to Highlands and Newman, the standard which applies in a JNOV analysis, we have adopted Ricks's mollified testimony as reflected in the body of this opinion.