# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-302

PATRICIA CASE AND PATRICK CASE

VERSUS

SHELTER INSURANCE COMPANY, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 72040
HONORABLE LORI ANN LANDRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy H. Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED AS AMENDED.**

**Joseph E. Windmeyer**
**2312 N. Hullen St.**
**Metairie, LA 70001-2996**
**(504) 833-0782**
**Counsel for Plaintiffs/Appellants:**
**Patricia Case**
**Patrick Case**

**Donald W. Price**
**Dué, Price, Guidry, Piedrahita & Andrews, APLC**
**8201 Jefferson Hwy.**
**Baton Rouge, LA 70809**
**(225) 929-7481**
**Counsel for Plaintiffs/Appellants:**
**Patricia Case**
**Patrick Case**

**Michael J. Breaux**
**Attorney at Law**
**P. O. Box 51106**
**Lafayette, LA 70505-1106**
**(337) 235-8000**
**Counsel for Defendants/Appellees:**
**Shelter Insurance Company**
**Barry Frederick**
**Burt Oubre, d/b/a Burt Oubre Farms**

**GREMILLION, Judge.**

Plaintiffs/Appellants, Patricia and Patrick Case, appeal the judgment rendered following the jury trial of their personal injury claims from a motor vehicle accident in St. Martin Parish. For the following reasons, we affirm as amended.

## FACTS

The motor vehicle accident at issue occurred on May 22, 2006. Patricia Case was driving from work with the St. Martin Parish School Board toward Loreauville, Louisiana, to purchase groceries. She testified that she happened upon the tractor driven by Barry Frederick, an employee of Burt Oubre, d/b/a Burt Oubre Farms, which was traveling in the same direction. Mrs. Case testified that as she turned from Louisiana Highway 86 onto Oday Road, she saw the tractor already on the road. She followed the tractor "a little ways" before deciding to pass it. Her testimony was vague as to the distance from her the tractor was when she first noticed it. She testified that she saw no lights whatsoever on the tractor. As she executed the passing maneuver, Mrs. Case's vehicle was struck by the tractor, which had turned left across her path. The initial collision deployed Mrs. Case's air bag. Thereafter, a second collision occurred.

Frederick testified that he was cutting drains in his employer's sugar cane fields. He had finished cutting drains on one field and was proceeding to another. This necessitated turning onto Oday Road. He traveled approximately two-tenths of a mile to reach his next field. The tractor's hazard lights, or "flashers," were activated. He checked his rear view mirror in the cab and saw no approaching vehicles. Frederick did not signal a left-hand turn. As he began to turn, Frederick heard the sound of tires screeching. He jerked the tractor back to the right, but was unable to avoid colliding with Mrs. Case's vehicle. The accident occurred perhaps

two feet across the center line of Oday Road, within Mrs. Case's passing lane.

Following the collision, Mrs. Case experienced back pain radiating into her legs. She initially sought treatment from her family physician, Dr. Kenneth Fournet, with whom she treated for some months. Thereafter, Mrs. Case was treated by orthopedic surgeon Dr. Allen Johnston. Ultimately, Dr. Johnston referred Mrs. Case to Dr. Louis Blanda, who performed a lumbar microdiskectomy and laminectomy in December 2007.

The Cases filed suit against Frederick, Oubre, and Shelter Insurance Company. The suit was tried in March 2009. The jury found Mrs. Case 25% and Frederick 75% comparatively negligent. Mrs. Case was awarded $200,294.32 in general and special damages. Mr. Case was awarded $5,000.00 in past and future loss of consortium, services, and society. The Cases appealed this judgment.

## ASSIGNMENTS OF ERROR

The Cases assign the following errors: 1) The jury manifestly erred in assessing Patricia Case with fault, and 2) The jury manifestly erred in awarding $49,998.00[1] in general damages.

## ANALYSIS

The Cases' assignments of error involve findings of fact by the jury. As such, they are subject to review for manifest error. The Louisiana Supreme Court has explained this analysis:

> 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court; and
>
> 2) the appellate court must further determine that the record establishes that the finding is clearly wrong

---

[1] The actual general damage award totaled $49,999.98.

(manifestly erroneous).

*See Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).

This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.

Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *See generally, Cosse v. Allen-Bradley Co.,* 601 So.2d 1349, 1351 (La.1992); *Housley v. Cerise,* 579 So.2d 973 (La.1991); *Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell v. ESCO,* 549 So.2d 840 (La.1989); *Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978). . . . Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

*Stobart v. State through Dept. of Transp. and Dev.*, 617 So.2d 880, 882-883 (La.1993).

*Comparative fault:*

Left-turning and overtaking motorist collisions represent the classic comparative fault scenario. In the case of interaction between left-turning and overtaking motorists, the law imposes duties on both. A vehicle passing on the left is to be given the right of way after it emits an audible signal. La.R.S. 32:73(2). Passing on the left is considered a dangerous maneuver, and a driver of a passing vehicle is held to a high degree of care. *Neal v. Highlands Ins. Co.*, 610 So.2d 177 (La.App. 3 Cir. 1992), *writ denied*, 612 So.2d 100 (1993). The same degree of care is owed by the left-turning vehicle. *Id.* The left-turning motorist is tasked by La.R.S. 32:104 with the obligation to signal his intention to turn and to refrain from turning until he has ascertained that it is safe to do so.

In the present matter, Frederick failed to fulfill his obligation to properly signal

3

his turn. Mrs. Case claims to have blown her horn before attempting to pass Frederick. However, Frederick heard no horn. Deputy Franklin Washington, the investigating officer, did not note Mrs. Case indicating during his investigation that she sounded her horn; further, Washington testified that, had Mrs. Case indicated that she sounded her horn, he probably would have noted that in his accident report. The report contained no such notation. Thus, a permissible interpretation of the testimony the jury heard is that Mrs. Case, too, failed to fulfill her statutory obligation to sound her horn. This would constitute a credibility determination on the jury's part, as they heard conflicting testimony on this issue.

The accident occurred on a rural road lined with cane fields on both sides. The tractor had its warning lights activated. The brake lights on the tractor were working, according to Frederick, and no witness contradicted this testimony. The tractor was moving at a slow pace on a road with a 35 mile per hour speed limit. According to Frederick, he began slowing well before attempting the turn. Mrs. Case denied seeing any lights on the tractor. We do not know whether the jury considered that because she did not see lights, Mrs. Case was inattentive.

A thorough review of the record presents sufficient evidence the jury could have considered in assessing fault on Mrs. Case. We are precluded from finding manifest error in that assessment.

*General damages:*

The Cases also complain of the jury's assessment of general damages. The verdict form presented to the jury is illuminating. The pertinent section is reproduced below:

> Did Plaintiff, Patricia Case, suffer any injuries and related

4

damages proximately

caused by the accident?

YES _____X_____ NO

(NOTE: If you answered NO to Question 4, proceed to Question 6. If you answered YES to Question 4, proceed to Question 5.)

5.

What amount, if any, in dollars and cents, will compensate Patricia Case for her injuries?

| 1. | Past medical expenses | $ | 35,096.32 |
|---|---|---|---|
| 2. | Future medical expenses | $ | 3,000.00 |
| 3. | Past loss wages | $ | 18,700.00 |
| 4. | Future loss of earning capacity | $ | 93,500.00 |
| 5. | Past physical pain and suffering | $ | 8,333.33 |
| 6. | Future physical pain and suffering | $ | 8,333.33 |
| 7. | Past mental anguish and distress | $ | 8,333.33 |
| 8. | Future mental anguish and distress | $ | 8,333.33 |
| 9. | Loss of enjoyment of life | $ | 8,333.33 |
| 10. | Permanent Disability | $ | 8,333.33 |

The figures assessed by the jury are significant in three respects. First, the amount assessed for past medical expenses is precise. This was the amount the parties stipulated to, subject to the defendants' objections to materiality, relevance, and causal relation. The jury obviously considered this evidence in assessing damages.

Second, the jury assessed $18,700.00 in past wage losses. This was the amount the appellants' economic expert, Dr. Randy Rice, testified was Mrs. Case's loss. Again, the jury's damage assessment comported with the evidence presented.

Lastly, the jury awarded identical $8,333.33 amounts for the six physical and psychological injury items on the verdict form. This suggests the jury had in mind a specific sum it wished to award in general damages and divided it evenly between the six items.

5

The fixing of general damages by a jury is discretionary. As the Louisiana Supreme Court stated:

> Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion, *Coco v. Winston Industries, Inc.,* 341 So.2d 332 (La.1977). And, "[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient,"*Reck v. Stevens,* 373 So.2d 498, 501 (La.1979). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. *Arceneaux v. Domingue,* 365 So.2d 1330 (La.1978). Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate.

*Theriot v. Allstate Ins. Co.*, 625 So. 2d 1337, 1340 (La.1993)(citations omitted).

There must, therefore, be a clear abuse of the jury's great discretion, as evidenced by the individual circumstances of the plaintiff, viewed in a light that most favorably supports the judgment, before this court may disturb a damage award.

Appellants rely heavily on previous cases to support their contention that the award is abusively low. In *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994), the supreme court said that "[t]he initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Id*. at 1260. While making this initial inquiry, we are specifically prohibited from using "a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the

6

facts and circumstances peculiar to the particular case." *Id.* at 1260. The rule is that such prior awards should be considered only after we have concluded that there has been an abuse of discretion. We are compelled to examine the record in this case to determine whether the award is abusively low.

Mrs. Case testified that before her surgery, she continued to perform her pre-accident household chores because they had to be done. However, she experienced constant throbbing and pain in her back and legs. After surgery, Mrs. Case had no pain in her legs. She testified that her only problem post-surgery is back pain when she bends or climbs, and periodic numbness in her toes that lasts about ten minutes. However, at another point in her testimony, Mrs. Case indicated that she had back pain daily. The pain interfered with her relationship with her husband and limited her ability to perform household tasks.

Mr. Case, though, testified that his wife's recovery after surgery exceeded his expectations. She moves around "pretty good." She still complains at times in the morning when she gets out of bed. Mrs. Case has a niece who lives nearby who helps with housework. Otherwise, she goes about her daily routine.

Dr. Blanda testified that the disc herniation for which he performed the microdiskectomy and laminectomy was relatively small. He did not see the need to perform a lumbar interbody fusion as he would on a patient with a more significant herniation. The procedure he performed, while not to be trivialized, was a minimally-invasive procedure, involving an incision about an inch long into which the surgical instruments are inserted.

Dr. Blanda also testified that Mrs. Case's disability in terms of work was probably limited to her recovery period, which could be hastened should she undergo

7

therapeutic "work hardening." He felt she would have some permanent restrictions on her activity level, such as no lifting over 50 pounds. While he was not conversant with the physical requirements of a cafeteria worker such as Mrs. Case, Dr. Blanda agreed that she could return to work as a cafeteria worker if she could do so subject to the 50-pound lifting limit.

Dr. Blanda also testified that he had last seen Mrs. Case approximately four months before trial and she had indicated that she felt much better and was no longer having any problems with pain radiating into her lower extremity. She only experienced back pain when the weather changed, a symptom that could be related to degenerative changes in Mrs. Case's spine that predated the accident. Her pain was confined to occasional flare-ups.

It also bears mentioning that Mrs. Case continued to work from the time of the accident until her surgery. Her fellow workers knew of her problems and pitched in to accommodate her. If she was able to work before the surgery, and if the surgery helped her condition, this tends to bolster Dr. Blanda's opinion that Mrs. Case should be able to return to work with limitations.

A consideration of the record as a whole reveals that Mrs. Case suffered a herniated lumbar disc for which she underwent surgery. There was no issue of the accident causing the herniation. Mrs. Case's subsequent surgery was limited and successful. It was, however, invasive surgery. She continues to experience periodic back pain, but has otherwise made a good recovery. Nonetheless, when considering the record as a whole, we are required to find the award of $49,999.98 in general damages below the range of the jury's discretion.

In *Este v. State Farm Ins. Cos.*, 96-99 (La.App. 3 Cir. 7/10/96), 676 So.2d 850,

8

we held that an award of $75,000.00 was the lowest amount within the court's discretion for the aggravation of a pre-existing, asymptomatic, spondylosis and bulging disk that did not warrant surgery. If a simple bulging disk and aggravation of an asymptomatic spondylosis can be awarded a minimum of $75,000.00 in general damages, an active herniation of a disk with surgical intervention warrants a general damage award of $100,000.00; any amount below that would be considered an abuse of the jury's vast discretion.

## CONCLUSION

The jury's assessment of comparative fault is reviewed under the manifest error standard. This requires a finding that such assessment is not reasonably supported by the record and is clearly wrong. We find no such manifest error. The review of the general damages assessment is conducted under a much more rigorous abuse-of-discretion standard. That review is also conducted in a light most favorable to supporting the judgment. We find the jury did abuse its discretion, and amend the general damage award to $100,000.

Accordingly, the judgment of the trial court is affirmed as amended. Costs of this appeal are taxed equally to appellants, Patrick and Patricia Case, and appellees, Barry Frederick, Burt Oubre, d/b/a Burt Oubre Farms, and Shelter Insurance Company.

**AFFIRMED AS AMENDED.**