ROBERT A. CHAISSON, Judge.
| aThis is an appeal by the St. John the Baptist School Board, and two of its football coaches, Larry Dauterive and Ronald Barrilloux, from a judgment in favor of Armaud Stirgus, for injuries that he suffered during a football practice at the school. Mr. Stirgus has answered the appeal seeking an increase in the award of damages. For the following reasons, we *198 reduce the amount awarded for medical expenses. In all other respects, the judgment is affirmed.
FACTS AND PROCEDURAL HISTORY
Armaud Stirgus was a student at East St. John High School and played on its football team. On January 22, 2007, during an outdoor off-season practice session, it began raining heavily, so coaches Dau-terive and Barrilloux decided to move the practice into the gym. While outside, the players wore shorts and shirts, and had their cleats on. They were instructed to go back to the locker room and change into dry clothes and tennis shoes for inside practice. Although there was conflicting evidence as to whether all of the players changed, it was not disputed that even lathose players who put on dry clothes had to cross an uncovered expanse of about 25 yards in the continuing rain to get from the locker room to the gym.
Once in the gym; about twenty of the players, including Mr. Stirgus, began running full speed passing patterns, which generally involved the receiver going a few steps forward and then making a cut to the side where the quarterback would deliver the ball. While running a pass route, Mr. Stirgus jumped for the ball, but when he came down his feet slipped out from under him and he injured his hip on impact with the floor. He sat out the remainder of the Monday practice and went home on the school bus. Later that evening his mother took him to an emergency room where he was diagnosed as having a muscle spasm in his hip. He continued to have pains over the next few days, and a second examination on Friday showed a fractured hip. Dr. Joseph Gonzales, Jr., a pediatric orthopaedic surgeon, performed surgery on Mr. Stirgus, using a plate and screws to stabilize the joint.
Suit was brought against the school and the coaches[1], alleging that they had failed to provide proper supervision and had allowed an unreasonable risk of injury to develop during the indoor practice. The parties stipulated to medical expenses of $21,626.57. After a bench trial, the trial judge awarded Mr. Stirgus $50,000 in past pain and suffering, and also awarded medical expenses of $71,871.71, which was $50,245.14 more than the stipulated amount. This appeal followed.
LAW AND ANALYSIS
We first address the issue of the award for medical expenses. At the beginning of the trial, Michael T. Beckers, Mr. Stirgus’s counsel, entered the following stipulation:
Your honor, included in the medical records are the bills. And I’d like just for the record to state that we're stipulating as to the amount of the medical bills incurred, that there’s going to be some confusion in |4there because there were charges in excess of what Medicaid paid. And the Medicaid covered bills are $16,165.77.
We have additional bills from Dr. Chandenia (phonetically) of $956. Those records were introduced. And additional bills of $4,504.80 from St. John Physical Therapy.
The total medical bills incurred today (sic) are $21,626.57.
Despite this stipulation, the trial judge awarded $71,871.71 in medical expenses, $47,208 of which was for bills from Children’s Hospital. Those bills were paid by Medicaid according to its fee schedule, *199 rather than what the hospital showed as its normal charges. This difference is not collectible from Mr. Stirgus, and thus it was error to award him this difference. This is precisely the confusion that the stipulation was meant to avoid, and the trial judge was clearly wrong in awarding any amount other than the stipulated amount. We thus amend the judgment to provide that the proper award for all past medical expenses is $21,626.57.
We next address the issue of liability. In Robinson v. Jefferson Parish School Bd., 08-1224 (La.App. 5 Cir. 4/7/09), 9 So.3d 1035, 1046-47, this court summarized the law relating to the liability of schools for injury to their students as follows:
A school board, through its agents and teachers, owes a duty of reasonable supervision over students. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. This duty does not make the school board the insurer of the safety of the children. Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision.
Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident.
To establish a claim against a school board for failure to adequately supervise the safety of its students, a plaintiff must prove: (1) negligence on the part of the school board, its agents, or teachers in | ^providing supervision; (2) a causal connection between the lack of supervision and the accident; and (3) that the risk of unreasonable injury was foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. [citations omitted ]
In the present case, the ultimate issue is whether the coaches were negligent in permitting a full speed practice to be conducted in the gym in the conditions that then prevailed, and the paramount factual question in this regard is whether the floor was wet. The evidence on this point was varied. There was no dispute that the players had been caught in the rain during the outside practice and had come into the locker room to change their clothes and shoes. It was also not seriously disputed that some of the players may not have changed before coming to the gym, and further, that even if all of the players had changed they still had to traverse an open space of about 25 yards in the rain to get from the locker room to the gym. There was also general agreement that about 20 players were executing the fourth pass route when the accident occurred, which meant that between 45 and 80 individual pass routes had already been run with at most possibly one prior mishap.
As to the condition of the floor, Mr. Stirgus testified that he did not see any water on the floor in the area where the passing drills were being run, but he did see water on other parts of the gym floor. He said that after he fell he noticed that his gym shorts were wet on the spot where they hit the floor, and he also noticed some wet streaks on the floor in the same area. He also said that another player had slipped down in that area before him. He was also sure that he had changed into dry clothes before coming into the gym. The two coaches both testified that they did not recall water being on the floor where the drills were being run, and both said that Mr. Stirgus was the only person to fall that day. Brandon Kephart, the player *200 who was next in line behind Mr. Stirgus to run the pass route, testified by way of deposition. He said that he did not see any water on the floor where Mr. |fiStirgus fell, but that it appeared that his shoes did not get any traction on the floor when he came down and that his feet just went out from under him. He did not see any other player fall that day. He also did not think that Mr. Stirgus had changed out of his wet clothes before coming to the gym.
Gerald George, Ph.D., was accepted as an expert in biomechanics. He reviewed all of the pre-trial depositions and other evidence, and concluded that considering all of the factors at work at the time of the accident, it was his opinion that the coaches performed inadequate supervision in conducting full speed drills in the gym, given the prevailing conditions. This opinion was predicated, of course, on a finding that the floor of the gym was wet where Mr. Stirgus fell, and that this damp condition was thus causally related to his injury.
Resolution of the above discrepancies involves factual determinations, and therefore the appellate standard of review of these determinations is manifest error. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). In Stobart, the court explained that the question is not whether the reviewing court would have made different findings had it been sitting as the trier of fact. It is rather whether, viewing the record as a whole, a reasonable trier of fact could have made the findings at issue on appeal. The court concluded that “where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Id. at 883.
In the present case, there was conflicting evidence as to whether there was water on the floor where Mr. Stirgus fell. Although the coaches and the other player did not notice any water, Mr. Stirgus said that he noticed that his shorts were wet after the fall, and he saw streaks of water on the floor at that time. There was evidence to show that some of the players did not change into dry clothes, and it was undisputed that even those that had changed had to go back out into the rain |7to get from the locker room to the gym. Considering all of this conflicting evidence, it is clear that a finding that the floor was wet was based on a reasonable view of that evidence. It is equally clear that it was reasonable on the entire record to find that the coaches did not properly supervise the practice, but rather allowed full speed drills involving quick turns and leaping for balls in a situation where it would not be unexpected to have hazardous wet floor conditions. Because the above findings of fact are based on a reasonable view of the evidence, they are not manifestly erroneous, and we may not set them aside.
The final issue concerns the $50,000 award for general damages, which plaintiff contends is too low and which erroneously does not include an award for future pain and suffering. Appellate review of damage awards was addressed in McDonald v. AIG Nat. Ins. Co., Inc., 10-751 (La.App. 5 Cir. 3/29/11), 63 So.3d 240, 241-42, as follows:
Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; Dufrene v. Gautreau Family, LLC 07-467 (La.App. 5 Cir. 2/22/08), 980 So.2d 68, 81, writs denied, 08-629 (La.5/9/08), 980 So.2d 694 and 08-628 (La.5/9/08), 980 So.2d 698. The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. Bouquet v. Wal-Mart Stores, Inc., 08-309 (La.4/4/08), 979 So.2d 456, 459. This vast discretion is such that an appellate *201 court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 628 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn, 623 So.2d at 1260. To determine whether the fact finder has abused its discretion, the reviewing court looks first to the facts and circumstances of the particular case. Bouquet v. Wal-Mart Stores, Inc., supra, 979 So.2d at 459.
The severity and duration of the injured person’s pain and suffering are the primary considerations in assessing general damages. Francis v. Brown, 95-1241 (La.App. 3 Cir. 3/20/96), 671 So.2d 1041. An appellate court may raise the award to the lowest reasonable amount or reduce it to the highest reasonable amount, only if articulable ^reasons are found to show that a reasonable trier of fact could not have made the award under all of the circumstances of the case. Williams v. Maritime, Inc., 04-625 (La.App. 5 Cir. 11/30/04), 889 So.2d 1055, writ denied, 04-3226 (La.3/11/05), 896 So.2d 72.
Here, Mr. Stirgus’s medical course was described by Dr. Gonzales, the pediatric orthopaedic surgeon who operated on him. Dr. Gonzales noted that on the Monday when X-rays were taken, they did not show a dislocation or fracture of the hip. However, by Friday a dislocation had indeed 'occurred, probably due to pressure from normal movements of the joint. He immediately did surgery to place the bone back in the socket, and subsequently inserted a plate with pins to prevent the dislocation from recurring. Mr. Stirgus had limited motion and weight bearing in the joint for two months. During the third month rehabilitation was done, and by the end of that month he was basically back to normal as to weight bearing. Dr. Gonzales said that just to be sure that the joint had healed, he waited until July of 2007 to release him for full activities. He saw Mr. Stirgus occasionally until February of 2008. His conclusion was that he had fully recovered for all activities by that time.
As to future problems, Dr. Gonzales said that Mr. Stirgus might feel discomfort when the weather changes and that he might be susceptible to arthritic developments later in life, but declined to give any estimate of the likelihood of such problems. He explained that there are so many factors that bear on future arthritic conditions, including heredity, that any numerical rating of this eventuality would be impossible.
Mr. Stirgus testified that he continues to have pain from the injury, but did not show that he has sought further medical treatments. He said that he had hoped to have a university sports career, but presented no other evidence to show that this was anything more than speculation on his part.
^Considering all of the above evidence, this court is unable to articulate any reasons why an award of $50,000 for past pain and suffering, and no award for future pain and suffering, constitutes an abuse of the trial judge’s vast discretion in fixing damages. In this circumstance, we must affirm that award.
CONCLUSION
For the foregoing reasons, we amend the judgment by reducing the award for total medical expenses to the stipulated amount of $21,626.57. In all other respects, the judgment is affirmed.
*202 AMENDED, AND AS AMENDED, AFFIRMED.

. Because Armaud was a minor at the time, the initial suit was brought on his behalf by his mother, Alana Stirgus.