KIM D. SIMON                                NO. 20-CA-156

VERSUS                                      FIFTH CIRCUIT

AUTOMOBILE CLUB INTER-INSURANCE             COURT OF APPEAL
EXCHANGE, STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,               STATE OF LOUISIANA
AND SHANNON D. SINGLETON


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 735-056, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING


October 13, 2021


**HANS J. LILJEBERG**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, Marc E. Johnson, Stephen J. Windhorst, and Hans J. Liljeberg


**AFFIRMED IN PART AND REVERSED IN PART; JNOV GRANTED IN PART AND AWARD AMENDED**
    **HJL**
    **JGG**

**WICKER, J., CONCURRING IN PART, DISSENTING IN PART**
    **FHW**

**JOHNSON, J., CONCURS, IN PART, AND DISSENTS, IN PART, FOR THE REASONS ASSIGNED BY JUDGE WICKER**
    **MEJ**

**WINDHORST, J., DISSENTS IN PART**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
KIM D. SIMON
    George B. Recile
    Walter R. Woodruff, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
    Matthew A. Mang
    Victoria H. Fabre

**LILJEBERG, J.**

This matter involves a lawsuit for injuries allegedly sustained by plaintiff, Kim D. Simon, during a motor vehicle accident that occurred on February 11, 2013 ("2013 accident"). At trial, Ms. Simon sought damages for alleged injuries to her back and hip from her uninsured/underinsured insurer, defendant State Farm Mutual Automobile Insurance Company. The jury awarded Ms. Simon $313,928.00, which included $188,928.00 for past medical expenses, $90,000.00 for future medical expenses and $35,000.00 in general damages for past, present and future physical pain and suffering. The jury did not award any amounts to Ms. Simon for past and future lost wages or for loss of earning capacity.

Ms. Simon now appeals the jury's verdict, as well as the trial court's denial of her motion for judgment notwithstanding the verdict ("JNOV") and/or alternative motion for new trial and additur, on two grounds. First, she contends it was inconsistent and an abuse of discretion to award such a low amount for her past, present and future physical pain and suffering, when the jury awarded significant past and future medical expenses, including costs for two back surgeries and a third surgery on her hip. Second, Ms. Simon argues the jury and trial court abused their discretion by failing to award her past and future lost wages, as well as loss of earning capacity, because she was no longer able to work as an occupational therapist after the 2013 accident. State Farm conversely argues Ms. Simon cannot meet her heavy burden to upset the jury verdict because this matter involves a low impact accident and the evidence established Ms. Simon had pre-existing conditions caused by a prior motor vehicle accident in 2011.

For the reasons that follow, we reverse the denial of the JNOV in part and amend the jury verdict to award $200,000.00 for Ms. Simon's past, present and future physical pain and suffering arising from the injuries to her back and hip. We find that the jury undoubtedly determined that the 2013 accident caused Ms.

Simon to undergo three surgeries in light of its decision to award past medical expenses. The jury further determined that she will continue to require treatment for her back due to the 2013 accident based on its decision to award $90,000.00 in future medical expenses. This inconsistency constitutes an abuse of discretion that requires an increase in the general damages award.

However, we decline to reverse the denial of the JNOV with respect to lost wages and loss of earning capacity, and affirm the jury's verdict as to this issue. Conflicting evidence exists regarding the debilitating nature of Ms. Simon's injuries from the prior 2011 accident that could have lead reasonable and fair-minded jurors to reach different conclusions.

**PROCEDURAL HISTORY AND FACTS**

On February 11, 2013, a 2006 GMC Yukon operated by defendant, Shannon Singleton, rear-ended a 2006 Toyota Sequoia operated by Ms. Simon in Jefferson Parish. Ms. Simon's SUV had no visible damage from the accident. The front bumper of Ms. Singleton's SUV had slight damage caused by the trailer hitch on the back of Ms. Simon's SUV. Ms. Simon filed this lawsuit against Ms. Singleton and her insurer, Automobile Club Inter-Insurance Exchange ("ACIIE"), for injuries allegedly sustained during the accident.[1] Ms. Simon also named State Farm, in its capacity as Ms. Simon's uninsured/underinsured insurer, as a defendant.

At the time of the accident, Ms. Simon worked as an occupational therapist for Ochsner Home Health and was on her way to an appointment with a patient. Ms. Simon claimed that as a result of the accident, she sustained injuries to her neck, lower back and hip.[2] Shortly after the accident, Ms. Simon experienced

---

[1] Prior to trial, Ms. Simon entered into a settlement with Ms. Singleton and ACIIE, and dismissed her claims against them with prejudice.

[2] As discussed more fully below, during trial, Ms. Simon and her counsel informed the jury that she was not seeking any damages resulting from alleged injuries to her neck because she could not determine whether the 2013 accident, or the prior 2011 accident caused the injury.

2

severe lower back pain and underwent an MRI, which revealed a disc herniation at the L3-L4 level. Ms. Simon was referred to a neurosurgeon, Dr. Lucien Miranne, who initially recommended epidural steroid injections. However, after the injections did not relieve Ms. Simon's increasing back pain and radiating leg pain, Dr. Miranne recommended a microdiscectomy at the L3-L4 level, which occurred in June 2013. Ms. Simon continued to experience lingering back and leg pain, and after exhausting all conservative measures, Dr. Miranne performed a spinal fusion on August 10, 2017.

Ms. Simon also claimed that after the accident, she experienced increased pain in her hip. She saw an orthopedic surgeon, Dr. Chad Millet, and he diagnosed a labral tear in her hip following an MRI. He performed arthroscopic surgery on Ms. Simon's hip on March 4, 2015. Ms. Simon also sought past and future lost wages, as well as damages for loss of earning capacity, based on her claim that she was no longer able to work as an occupational therapist after the 2013 accident.

On September 16, 2019, the case proceeded to trial against State Farm before a jury. The parties stipulated that (1) Ms. Singleton was 100% at fault for the 2013 accident; (2) Ms. Simon's past medicals were in the amount of $188,927.78; and (3) Ms. Simon's past lost wages were in the amount of $345,542.02.[3] On September 20, 2019, the jury returned a verdict in favor of Ms. Simon and against State Farm in the amount of $313,928.00. The jury awarded Ms. Simon the following damages:

GENERAL DAMAGES:

| | |
|---|---|
| Past, present & future Physical Pain and Suffering | $35,000.00 |
| Past, present & future Mental Anguish | $ — |

---

[3] As part of the stipulation, the parties agreed that State Farm was due a credit of $133,522.42, the amount paid by Ms. Simon's workers' compensation carrier. However, the trial court did not instruct the jurors regarding this portion of the stipulation as they were not permitted to learn information regarding the workers' compensation payments Ms. Simon received for the 2013 accident.

LOST OF ENJOYMENT OF LIFE:

    Past, present & future                                     $ —

PAST MEDICAL EXPENSES:                             $188,928.00

FUTURE MEDICAL & LIFE CARE EXPENSES:      $ 90,000.00

PAST LOST WAGES:                                 $ —

FUTURE LOST WAGES & LOSS OF EARNING CAPACITY:   $ —

    **TOTAL**:                                            $313,928.00

On November 19, 2019, after deducting the appropriate credit due to State Farm, the trial court made the jury's verdict the judgment of the court, finding in favor of Ms. Simon and against State Farm in the amount of $91,670.00, plus interest and costs.[4]  Subsequently, State Farm filed a motion for new trial and Ms. Simon filed a motion for JNOV and/or motion for new trial, or alternatively, for additur ("motion for JNOV").  The trial court denied the parties' post-trial motions.  Ms. Simon filed the instant appeal.

**DISCUSSION**

*General Damages for Past, Present and Future Pain and Suffering*

In her first assignment of error, Ms. Simon argues that the jury abused its discretion by awarding only $35,000.00 in general damages for her past, present and future physical pain and suffering.  She also argues that the trial court erred as a matter of law in denying her JNOV, and alternative motions for new trial and additur.[5]  Ms. Simon specifically argues that the jury's award is abusively low and inconsistent because the jury clearly determined the 2013 accident caused her back

---

[4] State Farm received a $100,000.00 credit for the liability limits of the ACIIE policy, and the parties stipulated at trial that State Farm was entitled to a credit of $122,258.00 for past medical expenses paid by Ms. Simon's workers' compensation insurer.

[5] The jury did not award Ms. Simon any amounts for "past, present and future mental anguish" or for "loss of enjoyment of life," which were both listed on the verdict form.  Loss of enjoyment of life and mental anguish are recoverable as separate elements of general damages on a jury verdict form. *See McGee v. A C and S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770, 775.  Ms. Simon did not assign as error or brief the trial court's denial of her motion as to the jury's findings on these separate elements of general damages.  Accordingly, we do not consider these elements of general damages as part of the appeal.

and hip injuries by awarding her $188,928.00 for her past medical expenses and $90,000.00 for future medical expenses. She contends the past medical expenses include costs for three surgeries and State Farm stipulated to allow her the full amount of her past medical expenses once the jury found causation existed for her injuries.

State Farm argues in opposition that the jury awarded only $35,000.00 for Ms. Simon's physical pain and suffering because it accepted the testimony of its medical expert, Dr. Monroe Laborde, and determined that Ms. Simon only sustained soft tissue injuries as a result of the 2013 accident. State Farms bases its argument on two grounds. First, it contends that the jury did not believe Ms. Simon met her burden to prove the "trivial" 2013 accident caused her significant back and hip injuries, or the need for post-accident surgeries. It contends it presented the jury with compelling evidence and testimony regarding the lack of causation between the trivial accident and Ms. Simon's alleged extreme injuries. Second, State Farm claims the jury heard overwhelming evidence that proved Ms. Simon's post-accident complaints were "merely a continuum of her longstanding, chronic pre-accident problems" resulting from a prior rear-end accident in 2011.

In support of its arguments regarding the trivial nature of the 2013 accident, State Farm cites to testimony from Ms. Simon and the defendant driver, Ms. Singleton, as well as testimony from its experts, Dr. Ronald Fijalkowski and Dr. Monroe Laborde. Ms. Simon testified on cross-examination that she did not know if her body moved from the impact, her body did not strike anything in her vehicle, and the impact did not result in any visible damage to her vehicle. She also testified that she did not receive emergency medical care immediately after the accident and went back to work. The defendant driver, Ms. Singleton, testified that she was driving slowly at the time of the accident and only "tapped" or "bumped"

5

Ms. Simon's SUV. She claimed that Ms. Simon did not appear to be in pain after the accident and was laughing while at the scene.

State Farm's expert biomedical and biomechanical engineer, Dr. Ronald Fijalkowski, testified that the accident was a minor event and calculated a maximum "Delta-V" (change in velocity) of less than 10 miles per hour as a result of the impact. He claimed that based on the insignificant compressive forces involved, Ms. Simon's body would have been well-controlled during the impact and the forces she experienced are the same she would encounter in normal daily activities, such as standing or walking down the street. Dr. Monroe Laborde, State Farm's expert in orthopedics and orthopedic biomechanics, also testified that based on the forces calculated by Dr. Fijalkowski, there was no potential for any significant injury to Ms. Simon's lower back and hip and it was highly unlikely the 2013 accident caused any injuries other than soft tissue injuries that would have resolved within six weeks.

State Farm contends that Dr. Jeremy Cummings, Ms. Simon's expert in biomechanics and accident reconstruction, conceded the compressive forces involved in the accident were insufficient to cause injury. While he agreed with this point, he explained that it was necessary to also consider lateral and shear forces that the impact caused to Ms. Simon's back. He ultimately opined that the combined forces he calculated were sufficient to cause a herniation injury in the lumbar spine. Dr. Cummings also testified that photographs of the front bumper of Ms. Singleton's SUV indicate damage consistent with an impact with the trailer hitch on the back of Ms. Simon's SUV. He explained that the trailer hitch is not designed as a bumper to absorb the energy from the impact and that means more of the impact energy is experienced by the driver. He further testified that he did not think it was possible for Dr. Fijalkowski to calculate a Delta-V force without

6

actually observing Ms. Simon's SUV, which none of the experts were able to do in this case.

In support of its second argument that the jury determined Ms. Simon's injuries were a "continuum of her pre-accident problems," State Farm points to testimony and medical records regarding Ms. Simon's injuries resulting from her 2011 motor vehicle accident. Ms. Simon explained to the jury that she was in a serious automobile accident in 2011, in which she sustained injuries to her neck and back when she was rear-ended by a vehicle travelling at approximately 50 miles per hour. She testified that her back injuries resolved approximately two months after the accident. However, she continued to have significant problems relating to her neck injury, including constant pain, migraines and constant pressure headaches. She explained her headaches as pressure in her head that felt like her "head was going to explode." Ms. Simon testified that she was taking medication to help her sleep due to her neck pain.

Following the 2011 accident, Ms. Simon treated with neurosurgeon, Dr. Miranne, who determined Ms. Simon suffered from disc herniations and degeneration in her neck. After physical therapy failed to resolve her pain, Dr. Miranne referred Ms. Simon to a pain management specialist, Dr. Justin Lundgren. Ms. Simon's medical records indicate that medication and cervical injections were not effective in relieving her pain. On March 8, 2012, Dr. Lundgren reported that Ms. Simon was struggling with persistent neck pain and that he was unsuccessful in improving Ms. Simon's function, pain or her overall quality of life. He also noted that the pain was making work very difficult for her because of the physical element of her job that provokes her pain, and that she felt better on days she was not doing physical work.

Three months prior to the 2013 accident, Ms. Simon also began treating with another pain management specialist, Dr. Kevin Martinez. She underwent a

7

cervical facet joint injection in December 2012, which failed to relieve her pain. In January 2013, Dr. Martinez performed cervical medical branch block injections, which were also unsuccessful in relieving her pain and headaches. At the time of the 2013 accident, Ms. Simon was scheduled to undergo a cervical rhizotomy surgery with Dr. Martinez, which involves burning the nerves in the neck to relieve pain. According to Dr. Martinez and Ms. Simon, the rhizotomy did not occur as scheduled due to the severe pain Ms. Simon was experiencing in her back after the 2013 accident.

In addition to her neck pain, State Farm argues that the jury heard testimony that Ms. Simon made a new report of back pain during a January 30, 2013 visit with Dr. Martinez shortly before the 2013 accident. At trial, Ms. Simon testified that she did not have lower back pain at that time, but rather was experiencing pain in her upper back. As noted above, Ms. Simon testified that her back issues resulting from the 2011 accident resolved within two months. She also testified that she experienced back pain on occasion prior to the 2013 accident due to her physical labor as an occupational therapist.

State Farm also points to testimony from its orthopedic expert, Dr. Laborde, that Ms. Simon's lower back and hip injuries were caused by degenerative conditions predating the accident, and that Ms. Simon at most could have sustained temporary soft tissue injuries to her neck and back as a result of the accident that would have resolved within six weeks. State Farm further argues that Ms. Simon's medical expert, Dr. Miranne, recognized that Ms. Simon had degenerative conditions in her spine that would have progressed to the point of a disc herniation, regardless of the accident. However, in reviewing his full testimony, Dr. Miranne stated that such was possible, but would not be more probable than not. He also casually related Ms. Simon's lower back injury to the 2013 accident.

With respect to Ms. Simon's hip injury, State Farm argues that the jury did not award general damages because she did not report hip pain to Dr. Martinez until almost a year after the 2013 accident. However, Ms. Simon introduced medical records from a March 25, 2013 visit with her neurologist, Dr. Daniel Trahant, indicating that during that visit, she reported hip pain after standing.[6] State Farm also claims Ms. Simon's hip surgeon, Dr. Chad Millet, suggested that her right hip was not causally related; he stated that it could be unusual to see complaints of traumatic hip pain if the person does not move much at impact.

State Farm finally argues that the jury also understood Ms. Simon's post-accident behavior was inconsistent with the need for surgery based on vacations she went on since the 2013 accident. She testified that she travelled both nationally and internationally after the accident, including trips to Paris, Italy, Disneyworld, Busch Gardens, Tampa and beach vacations. Ms. Simon testified that she went on those vacations with the written consent of her doctors. She testified that on her international vacations, she did some walking and went on bus tours. She further testified that she rode a scooter in Disneyworld and did not go on any rides at Busch Gardens.

In reply, Ms. Simon argues that despite State Farm's arguments regarding lack of causation for significant injury, it offers no rational or legal argument to explain how the jury awarded the full amount of her past medical expenses, along with $90,000.00 of future medical expenses, without finding the 2013 accident caused her injuries requiring these medical expenses. She notes that the trial court instructed the jury that she had the burden to prove the 2013 accident caused her to incur medical expenses and to prove the need for future medical expenses. She also argues that the jury specifically found in the jury interrogatories that the 2013

---

[6] Ms. Simon testified that she was seeing Dr. Trahant for the headaches she suffered from as a result of the 2011 accident. Dr. Martinez testified that Dr. Trahant referred Ms. Simon to him prior to the 2013 accident.

accident caused her to sustain injuries. Therefore, she contends that the jury could not award significant medical expenses, including costs for three surgeries, and at the same time only award $35,000.00 for the past, present and future physical pain and suffering associated with her surgeries and continuing need for treatment.

A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. *Davis v. Wal-Mart Stores, Inc.*, 00-445 (La. 11/28/00), 774 So.2d 84, 89. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, not merely when there is a preponderance of evidence for the mover. *Id*. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Id.* A trial court's denial of a motion for new trial should not be reversed unless it abused its discretion. *Riley v. Hollander*, 19-520, 19-473 (La. App. 5 Cir. 5/28/20), 296 So.3d 1248, 1258, *writ denied*, 20-833 (La. 10/14/20), 302 So.3d 1123.

In a personal injury case, the plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. *Stoll v. Allstate Ins. Co.,* 11-1006 (La. App. 5 Cir. 5/08/12), 95 So.3d 1089, 1095. The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. *Id.* Whether an accident caused a person's injuries is a question of fact

10

that should not be reversed on appeal absent manifest error. *Riley*, 296 So.3d at 1255.

General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, and the loss of enjoyment of life or lifestyle, which cannot be definitely measured in monetary terms. *Giglio v. ANPAC Louisiana Ins. Co.*, 20-209 (La. App. 5 Cir. 12/23/20), 309 So.3d 416, 423. The assessment of the appropriate amount of damages, by a trial judge or jury, is a determination of fact entitled to great deference on review. *Id.*

In *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La. 1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Louisiana Supreme Court explained the procedure appellate courts must follow in reviewing general damage awards:

> In *Reck v. Stevens*, 373 So.2d 498 (La. 1979), this Court commented on appellate review of general damage awards and on the "much discretion" in fixing damages accorded to trial courts by La. Civ. Code art. 1934(3) (1870) [footnote omitted]. The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
>
> In *Reck* this court disapproved of the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effect under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact [citations omitted]. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v.*

11

*Winston Industries, Inc.*, 341 So.2d 332 (La. 1976) [additional citations omitted].

> The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963) through *Coco* [*supra*], and through *Reck* to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

*Id*. at 1260–61.

In essence, before an appellate court can disturb a general damages award, the record must clearly reveal that the trier of fact abused its discretion in making the award. *Lockett v. UV Insurance Risk Retention Group*, 15-166 (La. App. 5 Cir. 11/19/15), 180 So.3d 557, 566. It is only after finding this abuse of discretion occurred, that appellate courts can consider prior awards, and only for the purpose of determining the highest or lowest award reasonably within the discretion afforded. *Id.* at 566-67.

In *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, 76, the Louisiana Supreme Court held that a verdict awarding medical expenses yet denying general damages is not *per se* invalid. Rather, a reviewing court faced with such a verdict must ask whether the jury's determination that a plaintiff is entitled to certain medical expenses, but not to general damages, is so inconsistent as to constitute an abuse of discretion. *Id*. Unlike the present matter, *Wainwright* involved a factual scenario where the plaintiff incurred medical expenses for an examination, but sustained no injury causing lasting, compensable physical pain and suffering. *Id.* at 77.

More recently, in *Thibodeaux v. Donnell*, 16-570 (La. 1/20/17), 219 So.3d 274, 280, the Louisiana Supreme Court recognized that the "*Wainwright* Court cautioned, however, that where a jury has awarded special damages but declined to award general damages, 'as a general proposition,' the verdict may 'often' be so inconsistent as to constitute an abuse of discretion." Furthermore, in *Green v. K-Mart Corporation*, 03-2495 (La. 5/25/04), 874 So.2d 838, 844, the Court ruled that the failure to make a general damage award was an abuse of discretion when "the jury determined that plaintiff suffered injuries causally related to the accident which required medical attention, and is still suffering an injury that will, in fact, require medical attention in the future." *See also Giglio v. ANPAC Louisiana Insurance Company*, 20-209 (La. 12/23/20), 309 So.3d 416, 426-27.

Therefore, this Court is tasked with determining whether the jury's award for past and future medical expenses is so inconsistent with the award of $35,000.00 for past, present and future physical pain and suffering that it constitutes an abuse of discretion. This Court previously concluded in a case involving a low impact accident that a low general damages award was an abuse of discretion and inconsistent when the accident at issue caused significant past and future medical expenses. *See, Lockett, supra*. In *Lockett*, this Court determined that a jury's award of past medical expenses in the amount of $100,826.99 and future medical expenses totaling $21,000.00, while awarding only $25,000.00 for past general damages and no amount for future general damages, was totally inconsistent in light of the record and constituted an abuse of discretion. 180 So.3d at 557. The plaintiff, Natalie Lockett, a registered nurse and supervisor, sought damages for injuries to her neck and lower back following a motor vehicle accident. The defendants in *Lockett* presented evidence that the accident at issue was low impact and only a two mile per hour sideswipe. Ms. Lockett did not seek emergency treatment immediately after the accident and experienced back pain at

times prior to the accident. Ms. Lockett underwent an MRI two months after the accident which revealed two herniated lumbar discs and two small herniations in her cervical spine. Within eight months after the accident, she reported that her "back pain was intractable and she could not live with it any longer." Ms. Lockett's neurosurgeon, Dr. Kenneth Vogel, performed a microsurgical discectomy. Following her surgery, Ms. Lockett continued to experience back, neck and shoulder pain that required her to sleep with a heating pad, and take pain medication, muscle relaxers and melatonin to help her sleep. Ms. Lockett continued working as a registered nurse after the accident.

After the jury rendered its verdict, Ms. Lockett filed a motion for JNOV, and alternative motions for new trial and additur, arguing the jury's low award of $21,000.00 for past pain and suffering, mental anguish and loss of enjoyment of life, as well as the failure to award any future amounts for these general damages, was inconsistent and constituted an abuse of discretion. After a hearing, the trial court granted Ms. Locket's request for a JNOV and increased her entire general damages award from $25,000.00 to $175,000.00.[7] On appeal, this Court agreed with the trial court's decision to grant the JNOV and further concluded that the jury's awards for past and future medical expenses and for general damages were totally inconsistent in light of the record and constituted an abuse of discretion on the following grounds:

> To begin, we must first determine whether the trial court properly granted Plaintiff's motion for JNOV. Our review of the record shows that Plaintiff testified in detail about the effect the accident had on her life, and that she experienced excruciating back pain, which ultimately reached the point where she could no longer bear it. As a result, she underwent back surgery to alleviate the pain at the recommendation of her physician, Dr. Vogel. Her treating physicians testified that the accident at issue, more probably than not, caused the herniated discs in Plaintiff's lumbar and cervical spine, and necessitated the medical treatment they provided. Plaintiff's treating physicians maintained

---

[7] The *Lockett* Court did not specify separate amounts awarded for past and future general damages or the different categories of general damages, other than to state the $175,000.00 was for general damages and loss of enjoyment of life.

their opinions regarding medical causation, even after reviewing the records from Dr. Mimeles' prior treatment of Plaintiff for low back pain and sciatica. They further testified that Plaintiff would continue to experience flare-ups of pain requiring medical treatment, throughout her life.

Conversely, Defendants presented evidence disputing whether the accident of April 15, 2011 caused Plaintiff's injuries, or that it required the medical treatment she received. Specifically, Defendants introduced Dr. Barrata's testimony regarding the unlikelihood of injury due to the low-impact nature of the accident, and Dr. Laborde's opinion that more likely than not, Plaintiff's lumbar disc herniations occurred during the time of her treatment with Dr. Mimeles from 2004 through 2009. Despite this evidence, our review shows that the jury nonetheless determined that Pierce's negligence in causing the accident of April 15, 2011 did in fact cause Plaintiff's injuries and awarded her past and future medical expenses. Yet, even after finding causation and awarding past and future medical expenses, the jury only awarded Plaintiff a total of $25,000 for past general damages, and did not award Plaintiff any future general damages.

Based upon our review of the record, we find that the jury's verdict which found that the accident of April 15, 2011 caused Plaintiff's injuries and awarded Plaintiff past and future medical expenses, but only awarded Plaintiff $25,000 in past general damages and no future general damages, is totally inconsistent in light of the record, and constitutes an abuse of discretion.

*Id.* at 567.

In *Davis v. Vosbein*, 12-626 (La. App 5 Cir. 5/16/13), 119 So.3d 100, this Court also determined that the failure to award amounts for physical pain and suffering when the plaintiff faced a future surgery constituted an abuse of discretion. In *Vosbein,* the plaintiff sustained a torn rotator cuff and injuries to her cervical spine when the defendant backed his boat trailer into her car. The jury awarded $9,000 in past medicals, $25,000 in future medicals and $5,000 in general damages for loss of enjoyment of life. The jury did not award any amount for past and future pain and suffering. In determining whether the award was so inconsistent as to constitute an abuse of discretion, this Court noted that at the time of trial, the plaintiff was still experiencing problems related to her injuries. This Court further noted that, "[t]he fact that the jury awarded Ms. Davis future medical expenses indicates that the jury believed that she continued to have injuries from

the accident that would require further medical intervention. It would be unreasonable to assume that Ms. Davis would undergo a future surgery to correct her shoulder injury in the absence of some degree of continued pain. In these circumstances, there is no question that the failure to award any amounts for pain and suffering, while awarding $9,000 in past medical expenses and $25,000 in future medical expenses, is so inconsistent as to constitute an abuse of discretion."

Just as the plaintiff in *Lockett,* Ms. Simon was involved in a low impact accident with minimal vehicle damage and did not seek emergency treatment immediately after the accident. Ms. Simon testified that she felt increased pain and tightness in her neck at the time of the accident, and her back pain started several hours later while she was at work. Due to the severity of the back pain, she contacted her treating physician, Dr. Kevin Martinez, to schedule an appointment. She saw Dr. Martinez on February 14, 2013, and reported pain in her lower back that she described as severe and intolerable, and also reported increased pain in her neck. Dr. Martinez referred Ms. Simon for an MRI of her lumbar spine on February 20, 2013, which revealed a disc herniation at the L3-L4 level.

Due to the disc herniations in her lumbar spine caused by the 2013 accident, Ms. Simon saw Dr. Lucien Miranne, a neurosurgeon, in March 2013. Dr. Miranne testified that he initially treated Ms. Simon with epidural steroid injections, which did not relieve her severe and intolerable back pain. In June 2013, upon Dr. Miranne's recommendation, Ms. Simon underwent a microdiscectomy at the L3-L4 level. Ms. Simon treated with Dr. Miranne for three years following the microdiscectomy and continued to have back pain and pain radiating down her leg. After additional steroid injections and other methods of conservative treatment, including medications, did not provide Ms. Simon with relief, Dr. Miranne recommended that she undergo a spinal fusion, which was performed on August 10, 2017. Ms. Simon testified that despite the risks associated with the surgeries,

she decided to have them because she "couldn't live with pain anymore" and "was willing to do anything." Dr. Miranne testified that with a reasonable degree of medical certainty, Ms. Simon's lower back pain and her two surgeries were directly related to the 2013 accident.

Ms. Simon testified that she also incurred damages due to an injury to her right hip as a result of the 2013 accident. She testified that she first complained of hip pain five or six weeks after the accident. Her medical records indicate that in March 2013, she complained of hip pain to Dr. Trahant after standing for long periods of time. Dr. Miranne testified that Ms. Simon first complained to him of right hip pain on January 22, 2014. Ms. Simon eventually treated with Dr. Chad Millet, an orthopedic surgeon who specializes in treating hips. On January 27, 2015, Dr. Millet diagnosed Ms. Simon with a labral tear in her right hip. On March 4, 2015, Ms. Simon underwent an arthroscopy surgery on her hip. Dr. Millet testified that the surgery was successful and discharged Ms. Simon with no restrictions. He testified that she would not need future medical care. Dr. Millet testified that with a reasonable degree of medical certainty, Ms. Simon's right hip labral tear and subsequent surgery were directly related to the 2013 accident.

The evidence State Farm points to regarding the low impact nature of the 2013 accident, as well as Ms. Simon's pre-existing conditions from the 2011 accident, do not negate the inconsistency of the jury's award of significant medical expenses, but low damages for resulting physical pain and suffering. We recognize that the parties stipulated to the amount of the past medical expenses and the jury did not have discretion as to the amount awarded if it determined that the 2013 accident caused injuries to Ms. Simon.[8] Notably, however, State Farm agreed to the amount stipulated, which included medical expenses for three

---

[8] The jury instructions provided: "The parties have stipulated that the plaintiff's past medical expenses are $188,927.78."

17

surgeries. Further, the jury was not bound by any stipulations in its decision to award $90,000.00 for future medical expenses related to her back injuries. If the jury believed that Ms. Simon only suffered a soft tissue injury that resolved within a few months, as State Farm suggests based on its expert testimony, the jury would not have awarded Ms. Simon future medical expenses.

Considering Ms. Simon's particular injuries and the required medical attention that the jury agreed was related to the accident, we conclude that the award for past, present and future physical pain and suffering is abusively low and inconsistent with the award of past and future medical expenses. We further find that no rational trier of fact could assess the effects of Ms. Simon's past, present and future pain and suffering at $35,000.00, particularly considering the three surgeries and additional treatment she underwent.

Having found the jury award to be abusively low, a reviewing court can only increase the award to the lowest amount which is reasonably within the court's discretion. *Ryan v. Zurich Am. Ins. Co.*, 07-2312 (La. 7/1/08), 988 So.2d 214, 219. Ms. Simon directs this Court to the following cases as evidence of the least reasonable amount of general damages for litigants with similar injuries and surgeries. With respect to her microdiscectomy, she notes that in *Case v. Shelter Ins. Co.*, 10-302 (La. App. 3 Cir. 10/6/10), 48 So.3d 1196, 1202, the court stated that $100,000.00 was the minimum general damages award for a disc herniation with surgical intervention. The plaintiff in *Case* was involved in a motor vehicle accident, suffered a disc herniation, underwent a lumbar microdiscectomy and laminectomy, and continued to experience periodic back pain.

With respect to her spinal fusion, Ms. Simon first cites to *Howard v. Norton*, 19-565 (La. App. 1 Cir. 6/12/20), 2020 WL 3109388, involving a plaintiff diagnosed with disc herniations at the L4-L5 and L5-S1 levels, and who underwent a spinal fusion, as a result of a motor vehicle accident. The appellate court

18

affirmed the jury's general damage award for $90,000.00, but commented that the award was on the low end of reasonable awards. *Id*. at p. 11. Ms. Simon also cites to this Court's decision in *Buckheister v. U.S. Environmental Services, LLC*, 11-1148 (La. App. 5 Cir. 5/31/12), 97 So.3d 414. The plaintiff in *Buckheister* was also involved in a car accident and suffered cervical herniations in her neck at three levels. She underwent steroid injections, rhizotomies, nerve blocks, and would require similar medical procedures in the future. This Court determined the jury award of $50,000.00 for general damages was manifestly erroneous and determined $150,000.00 was the lowest amount appropriate to award for general damages. *Id.* at 423.

In support of her request for additional general damages for her hip surgery, Ms. Simon cites to *Stirgus v. St. John the Baptist Parish School Board*, 13-15 (La. App. 5 Cir. 7/30/13), 121 So.3d 197, *writ denied*, 13-2084 (La. 11/15/13), 126 So.3d 473. That matter involved a slip and fall where the plaintiff suffered a hip fracture and dislocation that required surgery at her hip joint and several months of rehabilitation. This Court affirmed the trial court's damage award of $50,000.00. *Id.* at 201. The plaintiff in *Stirgus* underwent invasive surgery to insert a plate with pins, as opposed to the arthroscopic surgery Dr. Millet performed on Ms. Simon.

We also find the following recent cases instructive regarding awards of past, present and future physical pain and suffering for injuries involving disc herniations and similar surgeries. In *Ober v. Champagne,* 14-170 (La. App. 5 Cir. 12/16/14), 166 So.3d 254, *writ denied*, 15-332 (La. 4/24/15), 169 So.3d 361, this Court determined that an award of $190,000.00 for past and future physical pain and suffering was not an abuse of discretion where the plaintiff motorist suffered a herniated L4–L5 disc and a tear in his shoulder as result of an accident. The plaintiff underwent a surgery on his shoulder and a microdiscectomy. However, his back pain continued and the doctor described his condition as chronic. The

plaintiff could not return to work, faced a spinal fusion in the future, and also suffered from erectile dysfunction, which affected his relations with his wife.

In *Lockett*, *supra*, this Court affirmed the trial court's award of $175,000.00 total for general damages and loss of enjoyment of life for Ms. Lockett who sustained two herniated discs in her lower back and two small herniations in her neck requiring a microsurgical discectomy and continuing treatment including medications, injections and physical therapy for the remainder of her life.

Furthermore, in *Fontenot v. UV Insurance Risk Retention Group, Inc.*, 20-361, 20-362 (La. App. 3 Cir. 4/14/21), 2021 WL 1399874, the court determined that an award of $150,000.00 for past, present and future physical pain and suffering was the lowest reasonable amount within the trier of fact's discretion where following a rear-end accident, the plaintiff driver required two surgeries, a cervical discectomy and fusion surgery on three levels.

In the instant case, the evidence established that after Dr. Miranne discovered the disc herniation at the L3-L4 level and performed the microdiscectomy, Ms. Simon continued to experience back pain. Despite undergoing additional more conservative treatment including steroid injections, the pain continued so Dr. Miranne performed the spinal fusion. Ms. Simon will also incur additional medical expenses to treat her back pain in the future. Due to the factual differences in the cases surveyed and the limitation of this appeal to the amount of physical pain and suffering damages awarded, it is difficult to determine an exact comparison. Considering the foregoing, however, we find that an award of $175,000.00 for past, present, and future physical pain and suffering for the treatment for Ms. Simon's disc herniation and two surgeries to her back is the lowest reasonable amount within this Court's afforded discretion. We also find that $25,000.00 is the lowest reasonable amount to award for past physical pain and suffering caused by the arthroscopic surgery on Ms. Simon's hip, for a total

20

award of $200,000.00 for Ms. Simon's past, present, and future physical pain and suffering resulting from the 2013 accident.

*Past and Future Lost Wages and Loss of Earning Capacity*

In her second assignment of error, Ms. Simon contends the jury abused its discretion by failing to award any past and future lost wages, as well as damages for loss of earning capacity. She also argues that the trial court erred by denying her JNOV and alternative motion for new trial.

Awards for past and future lost wages are considered special damages, i.e., those which can be established to a reasonable mathematical certainty. *Williams v. State Farm Mut. Auto. Ins. Co.*, 20-248 (La. App. 5 Cir. 2/17/21), 314 So.3d 1010, *writ denied*, 21-402 (La. 5/11/21), 315 So.3d 871. A plaintiff is entitled to damages for lost wages upon proof that, but for the accident, she would have been earning wages. *Boyette v. United Services Automobile Assoc.*, 00-1918 (La. 4/3/01), 783 So.2d 1276, 1279. A plaintiff seeking damages for lost wages bears the burden of proving lost earnings, as well as the duration of time missed from work due to the accident. *Purvis v. Jefferson Parish Hospital Service*, 16-434 (La. App. 5 Cir. 12/21/16), 209 So.3d 363, 378. To obtain an award for future lost wages or loss of earning capacity, a plaintiff must present medical evidence indicating with reasonable certainty that there exists a residual disability causally related to the accident. *Id.*

In situations involving multiple accidents, whether preceding or subsequent to the accident at issue, a tortfeasor is liable only for the direct and proximate results of his wrongful acts, including aggravation of any preexisting injuries. *Giavotella v. Mitchell*, 19-100 (La. App. 1 Cir. 10/24/19), 289 So.3d 1058, 1077, *writ denied*, 19-1855 (La. 1/22/20), 291 So.3d 1044. Although a tortfeasor takes his victim as he finds him, the tortfeasor cannot be held liable for damages which are not attributable to the wrongful act. *Id.*

21

The central issue before this Court as to whether the jury and trial court should have awarded amounts for past and future lost wages and loss of earning capacity is causation; that is, whether but for the 2013 accident, Ms. Simon was unable to earn wages. By awarding significant past and future medical expenses, it is undeniable that the jury found causation existed between the 2013 accident and the injuries that Ms. Simon sustained. However, our analysis with respect to causation for past and future lost wages and loss of earning capacity is complicated by Ms. Simon's pre-existing health issues arising from neck injuries allegedly caused by the 2011 accident and evidence about the effect these conditions had on her ability to work.

On appeal, Ms. Simon specifically contends that the jury's failure to award stipulated past lost wages in the amount of $345,542.02 was an abuse of discretion and the trial court erred in denying her JNOV on this issue. Ms. Simon argues that as part of the stipulation for past lost wages, the parties agreed State Farm was due a credit of $133,522.42 paid by Ms. Simon's workers' compensation carrier.[9] She contends by entering into this stipulation, State Farm recognized she missed compensable time from work due to injuries sustained as a result of the 2013 accident. Ms. Simon further argues that the award of all of her past medical expenses, including the cost of three surgeries, establishes that she would miss work and wages to undergo and convalesce from these procedures.

As for future lost wages and loss of earning capacity, Ms. Simon contends the jury heard unrefuted testimony that she was a full-time occupational therapist prior to the 2013 accident. Her expert economist, Dr. Randy Rice, testified that at the time of the accident she had a potential earning capacity of $1,431,972.00 over the remainder of her work life expectancy. After the 2013 accident, Ms. Simon's

---

[9] The trial court and parties did not inform the jury of this stipulation regarding the workers' compensation credit and the jury did not hear any evidence relating to the payment of workers' compensation benefits to Ms. Simon with respect to the 2013 accident.

treating physicians and vocational rehabilitation expert, Dr. Stokes, determined that she would never be able to work again as an occupational therapist and that she would always be limited to sedentary work. Based on her limitations, Dr. Rice and Dr. Stokes determined that her new potential earning capacity was limited to $403,806.00 over the course of her work life expectancy, with a future loss earning capacity of $1,001,006.00. Ms. Simon contends based on the uncontroverted evidence, the jury abused its discretion in not awarding her damages for past and future lost wages and loss of earning capacity, and the trial court erred in denying her JNOV and motion for new trial on these claims.

State Farm argues in its opposition brief that the explanation for the jury's decision to deny Ms. Simon lost wages or loss of earning capacity is the evidence it heard regarding Ms. Simon's pre-existing neck injuries that caused migraines and disabling pressure headaches that were affecting her ability to work. It further contends that the jury heard testimony from Ms. Simon's own expert stating that these headaches were debilitating and would have prevented her from maintaining gainful employment. Therefore, State Farm contends that the evidence established that regardless of the 2013 accident, Ms. Simon would not have been able to work.

State Farm specifically points to Ms. Simon's testimony that she had difficulty working and sleeping before the 2013 accident due to the neck pain, migraines and pressure headaches, and that these conditions were affecting her life in a significant way. Ms. Simon explained her headaches as pressure in her head that felt like her "head was going to explode." State Farm further notes that Ms. Simon best friend, Cheryl Braud, agreed Ms. Simon had problems working prior to the 2013 accident due to her neck injuries and testified that Ms. Simon did everything in pain.

Dr. Martinez testified that he first saw Ms. Simon several months before the 2013 accident. He testified that during their first visit, Ms. Simon reported she was

having difficulty working. Twelve days before the accident, she reported to Dr. Martinez that her pain and headaches were constant on a daily basis, and she felt hopeless and controlled by the pain. Dr. Martinez further testified that Ms. Simon's chronic pain and constant headaches had been ongoing for a year, and were going to continue to affect her ability to work, even if Ms. Simon was not involved in the 2013 accident. He also testified that Ms. Simon was scheduled for a rhizotomy at the time of the 2013 accident, which was cancelled due to the 2013 accident. He eventually performed the rhizotomy after the 2013 accident, but it was not successful in relieving Ms. Simon's pain. He further agreed on cross-examination that Ms. Simon's decision to remove her neck injuries as an element of damages for the jury's consideration did not mean her pain and headaches did not exist before and after the 2013 accident, or that they did not continue to affect her ability to work.

State Farm contends the most detrimental evidence to Ms. Simon's assertion that she is entitled to lost wages and loss of earning capacity is the testimony from her vocational rehabilitation expert, Dr. Stokes, who admitted on cross-examination that Ms. Simon "couldn't maintain or sustain employment" due to the debilitating headaches resulting from the 2011 accident:

> Q     You also reviewed, it looks like, and actually spoke with a Dr. Amy Voight in your analysis; is that correct?
>
> A     Yes.
>
> Q     Who is Dr. Voight? Do you know?
>
> A     She's a neurologist that specializes in headaches.
>
> Q     And I see - - and I'm going back to your first report, Doctor, on Page 14 I believe it is, at the bottom of Page 14, in the third sentence. I'll give you a second to get there.
>
> A     (Witness viewing document) The last paragraph, third sentence?

Q    Yes, sir.

A    All right.

Q    It says, quote, Dr. Voight opined Mrs. Simon would have trouble maintaining gainful employment due to her migraine headaches; is that your understanding?

A    Yes.  She only consulted with me about headaches. She's a neurologist.  That's what she specializes in.

Q    Are you aware - - is it your understanding Mrs. Simon's migraine headaches long preexisted the 2013 accident?

A    Yes.  That's, this is the report that I combined both accidents; and then I was asked later to separate that out and only deal with that.

Q    Right, right.

A    This particular case.

Q    And you are aware, is it correct, to save some time the migraines started after the 2011 accident?  Is that your understanding based on your review of the records of Dr. Voight and also your consultation?

A    Yes.

* * *

Q    I notice in your first report which included things that are acknowledged not to be related to the 2013 accident, headaches and neck and some of the things you were asked about by Ms. Simon's lawyer, when that was in the report, what was your prognosis or your vocational prognosis going forward at that time?

A    Poor.

Q    And that was with everything else included in your report?

A    Everything included.  I combined everything.  And I looked at that.  And I thought that her outlook for future employment was very poor.

Q    And in the second report where you removed everything that was not related or not caused by the 2013 accident, according to her lawyer and what was told to you, her prognosis or her vocation ability improved; did it not?

A    Yes, to fair.

25

Q    And is the explanation for the improvement, the removal of injuries and problems that predated have nothing to do with the 2013 accident, based on your understanding?

A    Yes.  Primarily with that was the headaches.  The headaches were predominant, and it was debilitating.  And she couldn't maintain or sustain employment with that.  Now if you take that out, because it's the previous accident, she moves to fair.

Q    Sure.  And when you say the migraines were debilitating, they were affecting her ability to maintain gainful employment, that's all predating the 2013 accident, based on your study?

A    Yes.

The jury also heard Ms. Simon testify that she was not seeking any damages arising from alleged injuries to her neck because she could not determine which accident caused these damages:

Q    Now we heard about the neck. And I thought I made it clear, but I want to hear it from you: Are we asking for anything from this Court today for your neck complaints?

A    No, sir.

Q    But you've testified that your neck was injured in this accident, but we can't distinguish between what was the July and what was the 2013 accident relative to your neck; is that fair?

A    Yes, sir.

                    * * *

Q    We're only asking and I'm asking are you only asking to be compensated for your low back as a result of the February 13th and for your hip as a result of the February, 2013 accident?

A    Yes, sir.

As explained above, a JNOV is warranted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions.  Although the parties stipulated as to the amount of Ms. Simon's past

lost wages, State Farm did not stipulate that the lost wages were causally related to the 2013 accident.[10] We recognize that Ms. Simon testified that she was working through the pain as a full time occupational therapist at the time of the 2013 accident and that she continued to work for Ochsner in a light duty office capacity until Ochsner terminated her employment in 2014. We further recognize that Ms. Simon's treating physicians did not have her under work restrictions prior to the 2013 accident and they testified she could not work as an occupational therapist, which required lifting patients, due to her lower back injuries caused by the 2013 accident. However, the jury heard conflicting testimony as to whether Ms. Simon's past and future lost wages and loss of earning capacity were casually related to the 2013 accident. Ms. Simon and Dr. Martinez testified to the difficulties she faced in working and sleeping due to the complications resulting from her neck injury in the 2011 accident. These difficulties were also reflected in her medical records from her treating physicians, including Dr. Martinez, Dr. Lundgren and Dr. Miranne. Further, Dr. Stokes states at the end of his testimony that the headaches caused by the 2011 accident were debilitating and she could not "maintain or sustain employment with that." He further stated that when he removed the neck injuries caused by the 2011 accident, Ms. Simon prognosis to work improved to allow her to work in a sedentary capacity.[11] Ms. Simon does not address this testimony from Dr. Stokes in either her original appellate brief or reply brief filed with this Court. We reviewed the entirety of his testimony and conclude

---

[10] The jury instruction establishes that State Farm only stipulated to the amount:

> In determining any award that you might make for wage loss, you should consider the evidence presented to you on that issue. Any award which you may make should be based on plaintiff's gross income, that is his earnings before deductions for income taxes, social security and so forth-not on what we generally call his take home pay. If you find that the Plaintiff is entitled to past lost wages, the parties have stipulated that the amount of past lost wages is $345,542.02.

[11] Dr. Stokes explained that he created two reports at the request of Ms. Simon's counsel. The first report included her injuries from both accidents and indicated her prognosis to maintain work was poor. He created the second report because her counsel asked him to remove the injuries to her neck and he indicated that her ability to work improved to fair. He explained that he told Ms. Simon's counsel that this request to separate the injuries was unusual because his normal practice is to evaluate the ability to work based on the entire person.

that reasonable jurors could interpret his testimony as stating that Ms. Simon could not maintain employment due to her headaches. Finally, the jury heard Ms. Simon and her counsel state that they decided not to ask for any damages relating to her neck due to their inability to determine which accident caused damages resulting from her neck injuries.

Upon review, we find evidence exists that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to whether Ms. Simon suffered past or future lost wages or loss of earning capacity due to the 2013 accident. Reasonable jurors could have determined on the issue of causation of lost wages and loss of earning capacity, that but for the injuries caused by the earlier 2011 accident, Ms. Simon would not have been able to work and that the injuries to her lower back, which prevented her from working as an occupational therapist, did not further change her situation. The jurors could have also determined, just as Ms. Simon indicated, that because they could not distinguish which accident caused Ms. Simon's lost wages and loss of earning capacity, they would not award these damages. Thus, we find that the trial court did not abuse its discretion in denying the JNOV and the jury was not manifestly erroneous in declining to award damages for past or future lost wages or loss of earning capacity. For the same reasons, we also find no abuse of discretion in the trial court's denial of Ms. Simon's alternative motion for new trial on this issue.

**DECREE**

For the reasons stated herein, we reverse the denial of the JNOV in part and amend the jury verdict to award $200,000.00 for Ms. Simon's past and future physical pain and suffering arising from the injuries to her back and hip. In all

other respects, the jury's verdict and the trial court's denial of the JNOV and alternative motion for new trial is affirmed.

**<u>AFFIRMED IN PART AND REVERSED IN PART; JNOV GRANTED IN PART AND AWARD AMENDED</u>**

| KIM D. SIMON | NO. 20-CA-156 |
|---|---|
| VERSUS | FIFTH CIRCUIT |
| AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, AND SHANNON D. SINGLETON | COURT OF APPEAL STATE OF LOUISIANA |

## WICKER J., CONCURRING IN PART, DISSENTING IN PART

I concur with the majority opinion to reverse the denial of the JNOV in part and amend the jury verdict to increase the general damage award from $35,000 to $200,000 for Mrs. Simon's past and future pain and suffering in connection with the back and hip injuries she sustained in the February 2013 accident.

However, I respectfully dissent from the majority's opinion regarding the jury verdict as to past and future lost wages and loss of earning capacity. The majority has conflated these legal issues which has obscured the legal standards for each claim and further made it challenging to distinguish one claim from the other.

### Past Lost Wages

To recover for actual past wage loss, a plaintiff must prove the length of time missed from work due to the tort and must prove past lost earnings. *Williams v. State Farm Mut. Auto. Ins. Co.*, 20-248 (La. App. 5 Cir. 2/17/21); 314 So.3d 1010, *writ denied*, 21-00402 (La. 5/11/21); 315 So.3d 871; citing *Ezzell v. Miranne*, 11-228 (La. App. 5 Cir. 12/28/11), 84 So.3d 641, 651-52 (internal citations omitted). Past lost earnings are susceptible of mathematical calculation from evidence offered at trial. *Id*. An award for past lost earnings requires evidence as reasonably establishes the claim, which may consist of the plaintiff's own testimony. *Id*. An award for past lost earnings is not subject to the much-discretion rule when it is susceptible of mathematical calculation from documentary proof. *Id*. The plaintiff's uncorroborated, self-serving testimony will not be sufficient to support an award if it is shown that corroborative evidence was available and was not produced. *Id* citing *Hymel ex rel. Hymel v. Thomas*, 99-826 (La. App. 5 Cir. 12/21/99), 758 So.2d 201, 209. However, a plaintiff is entitled to damages for past lost wages upon proof that, but for the accident, he would have been earning wages. *Boyette v. United Servs. Auto. Ass'n*, 00-1918 (La. 4/3/01), 783 So.2d 1276. The award is based upon the plaintiff's past earnings and the length of time he was unable to work because of the accident. *Id*.

A review of the record shows that Mrs. Simon[1] testified that she had been employed as a full-time occupational therapist for quite a few years prior to the February 2013 accident. Mrs. Simon graduated from LSU Medical Center with a

---

[1] At the time of the February 2013 accident, Mrs. Simon was forty-two years of age, and at the subject trial, she was fifty years old.

Bachelor of Science degree in occupational therapy. She had been employed with Ochsner Home Health since 2001. Prior to being employed with Ochsner, Mrs. Simon was employed as an occupational therapist at Children's Hospital. At trial, Mrs. Simon admitted that after her July 2011 collision, but prior to her February 2013 accident, she was unable to work for two-weeks and thereafter, she returned to work and performed only light-duty tasks to accommodate her restrictions in connection with her neck injury, occipital injury, and headache syndrome sustained in the July 2011 accident. Mrs. Simon was limited to light-duty tasks for approximately 5 months while under the care of Dr. Martinez. At that time, she performed only clerical tasks and did not see any patients. After the 5-month period concluded, Mrs. Simon returned to her full-time occupation as an occupational therapist, which included regularly working with patients.

Mrs. Simon testified that for approximately 13months prior to the February 2013 accident, she continued to be employed as a full-time occupational therapist. However, she explained that she continued to suffer with pain in her neck and headaches, but "the pain was tolerable." Mrs. Simon stated she was not involved in any accidents or incidents that caused an injury to her back between the July 2011 accident and the February 2013 accident.

The record further shows that Mrs. Simon testified that following her February 20, 2013 MRI results, which showed a disc herniation at L3-4, Dr. Martinez recommended that she limit her work-related activities to light-duty tasks and no longer lift patients. However, on September 3, 2014, her employer, Ochsner Home Health, terminated[2] Mrs. Simon due to her inability to return to her full-time position as an occupational therapist, which required her to lift patients and perform tasks that included bending and twisting. At trial, Mrs. Simon introduced a letter from Ochsner wherein the reasons for her discharge were cited as her inability to return to her position as a full-time occupational therapist and perform the tasks associated with same. Mrs. Simon testified that she has not returned to work due to her permanent restrictions as a result of her back injury in the February 2013 accident.

Absent from the record is any evidence or testimony that indicated that Mrs. Simon had planned to reduce her hours or discontinue her career as an occupational therapist prior to the February 2013 collision. No conflicting testimony was presented at trial regarding Mrs. Simon's past lost wages. While Dr. Stokes opined that her work future was bleak, there is no evidence whatsoever that she would have been unable to work as an occupational therapist at any time between the first accident and the trial of the second accident, but for the second accident. Mrs. Simon continued working in an admin capacity after the second accident until she was discharged. Considering the jury determined that causation of the lumbar spine injury was linked to the February 2013 accident, and there was no testimony or evidence to rebut her past lost wages, the jury was manifestly erroneous in not awarding Mrs. Simon past lost wages. Therefore, in light of the evidence and legal standard to recoup lost wages, I am of the opinion that Mrs. Simon is entitled to the stipulated past lost wages of $345,542.02.

---

[2] At the time of her termination, Mrs. Simon's received an hourly-rate of $42.99 while she performed light-duty work. Mrs. Simon earned an annual income of $47,320.21 in 2013, and $31,633.55 in 2014.

2

**Future Loss Wages and Loss of Earning Capacity**

I agree with the majority's opinion that the analysis of causation for past and future wages and loss of earning capacity is complicated by Mrs. Simon's pre-existing neck injury caused by the 2011 accident. However, it is not impossible to determine. Based on the evidence adduced at trial, the jury's finding that Mrs. Simon was not entitled to loss of future earning capacity and wages was unreasonable because the facts and inferences point so strongly and overwhelmingly in favor of plaintiff.

On cross-examination, Dr. Stokes opined that Mrs. Simon's vocational prognosis was poor considering *all of her injuries* (for both the July 2011 and February 2013 accidents) as outlined in his first report dated May 2, 2019. While Dr. Stokes further opined that Mrs. Simon's headaches were debilitating and predominant such that she could not sustain or maintain employment, he *did not opine* that it was the sole cause of her inability to work. The jury heard testimony that her neck injuries was a major contributing factor regarding her inability to work insofar that Mrs. Simon was not pain free. Yet, the jury also heard testimony that it was not until after her back injury, caused by the 2013 accident, which led to her need for multiple surgeries, that she was actually no longer able to work as an occupational therapist.

Based upon a review of the record, the jury heard uncontroverted evidence regarding Mrs. Simon's impairment. The defense introduced no evidence to rebut the economist's life care plan or the reduction in her work-life expectancy or the reduction in her future earnings due to her functional restrictions. Instead, the defense relied upon the testimony of Shannon D. Singleton, the other motorist involved in the accident and individual defendant in this case, who testified that the accident was a tap and that she sustained no injuries. The defense further relied on the testimonies of Dr. Ronald Fijalkowski, an expert in the field of biomechanics, as to the biomechanics and his analysis regarding the likelihood of the accident causing a lumbar spinal injury, and of Dr. Laborde, who opined that auto accidents rarely cause a herniation injury. Obviously, the jury did not find any of the aforementioned evidence convincing or the testimony credible since it found causation existed between the 2013 accident and Mrs. Simon's back injury.

When considering an award for loss of earning capacity, the burden is on the plaintiff to prove that because of his injuries, he has suffered a loss of income. *Archangel v. Mayeaux*, 12-696 (La. App. 5 Cir. 5/30/13); 119 So.3d 786; citing *LeBlanc v. Allstate Ins. Co.*, 00–1128 (La. App. 5 Cir. 11/28/00); 772 So.2d 400, 405, *writ denied*, 00–3522 (La. 2/9/01); 785 So.2d 831. A plaintiff who seeks to recover for loss of earning capacity must prove the extent of his injuries resulting from the accident and also has the burden of proving that the injuries he sustained have incapacitated him from doing work of reasonable character in the future, that is, work for which he was fitted by training and experience, of same or similar kind in which he was engaged at the time of the accident. *Id*; *Richard v. Walmart Stores, Inc.*, 29,926 (La. App. 2 Cir. 10/31/97); 702 So.2d 79, 89.

At trial, the testimony concerning Mrs. Simon's employment history and wage earnings history was clear. As previous discussed, Mrs. Simon testified that she has been employed with Ochsner Home Health as an occupational therapist for more than a decade. Her duties consisted of traveling to and from the patients'

residence, performing patient evaluations, providing caregiver training and treatment, teaching patients how to be independent by bathing, dressing, cooking, transferring themselves from the bed to their wheelchairs, strength training, lifting patients, and assisting patients with any other needs to care for themselves. Furthermore, Mrs. Simon introduced evidence of her tax records from 2010 through 2014[3] to corroborate her testimony regarding her earning capacity and ability to earn a living in the future. At trial, Mrs. Simon further testified that once she returned to her full-time status as an occupational therapist in 2012, after a five-month bout of light-duty work, she had a lighter patient load and earned less because she was required to rebuild her patient base, which determined her annual salary based on the number of patients she treated. Based on her earnings in 2012, but for this accident for the period between the 2013 accident and the trial, Mrs. Simon would have earned at least what she earned in 2012.

Mrs. Simon testified that prior to the 2013 accident she continued to work full-time despite having headaches and neck pain since the pain was tolerable. It is not uncommon for individuals to work despite being in a measure of pain. Further, the record reveals that it was unrefuted that the new injury – the back injury – further contributed to her compromised condition in terms of her ability to continue her employment as a full-time occupational therapist. Mrs. Simon's husband, Todd G. Simon, and her close friend, Cheryl Braud, both testified in support of her pre-accident and post-accident condition. The record clearly shows that Mrs. Simon was able to work full-time without any restrictions, albeit in pain, for 13-months before the February 2013 accident, which was after the July 2011 accident wherein she sustained the headache syndrome and neck injury.

Moreover, according to the record, Mrs. Simon's treating physicians opined that her back injury sustained in the February 2013 accident caused her to become permanently restricted to sedentary occupations and that she cannot return to her former occupation as an occupational therapist.

At trial, Dr. Kevin R. Martinez, of Southern Brain & Spine, an expert in the field of physical medicine and rehabilitation, testified that he treated Mrs. Simon for her accident related-injuries. Specifically, Dr. Martinez testified that he first treated Mrs. Simon for a neck injury, occipital injury, and headache syndrome she sustained in connection with a July 2011 accident. While under Dr. Martinez's care for that injury, Mrs. Simon was involved in a subsequent accident in February 2013. Regarding the February 2013 accident, Dr. Martinez explained that he treated Mrs. Simon for a new injury - back injury - and he continued to treat her neck injury, which had been aggravated by that second accident. During his treatment course of Mrs. Simon, Dr. Martinez opined that her back injury was more severe than her neck injury. This was supported by Mrs. Simon's MRI results that showed a herniation at the L3-4 level of her lumbar spine along with possible lesions.

Accordingly, Dr. Martinez referred her to neurosurgeon Dr. Lucien S. Miranne, Jr., of Southern Brain & Spine, an expert in the field of neurosurgery, for further evaluation and treatment of her back injury. Dr. Miranne testified that he treated Mrs. Simon for her back injury. He recalled that Mrs. Simon had a minor soft tissue back injury in connection with her July 2011 accident, but that injury resolved

---

[3] At trial, Mrs. Simon testified and introduced into the record the following tax records: 1) 2010 earnings of $73,777.26; 2) 2011 earnings of $79,193.63; 3) 2012 earnings of $63,820.46; 4) 2013 earnings of $47,327.21; 5) 2014 earnings of $ 31, 633.53.

without any medical treatment within two months. However, his review of her back injury after her February 2013 accident, presented an acute disc herniation at L3-4 level, with radiating leg pain, which necessitated multiple epidural steroid injections, a micro-discectomy at level L3-4 on June 27, 2013, and a fusion at level L3-4 on August 10, 2017. Dr. Miranne testified that Mrs. Simon was neurologically disabled due to her back injury. He opined that Mrs. Simon will never be able to return to her job as an occupational therapist and that she may seek alternative employment wherein she can limit her activities to light and sedentary duties, such as an office setting, that would not require her to repetitively bend and lift, permit alternative sitting and standing, and require lifting less than ten to fifteen pounds. Dr. Miranne also opined that Mrs. Simon would experience residual problems in her back in the future. He ultimately determined that Mrs. Simon would have a lifetime of restrictions.

Both Dr. Martinez and Dr. Miranne causally related Mrs. Simon's lumbar spine injury to the February 2013 accident, and concurred with Dr. Larry Stokes' life care plan for Mrs. Simon.

Dr. Larry Stokes, an expert in vocational rehabilitation and life care plans, opined that prior to the February 2013 accident, Mrs. Simon was employed as a full-time occupational therapist, and since she sustained a back injury, she could not return to that type of work – an assessment that her treating physicians, Dr. Martinez[4], Dr. Miranne, and Dr. Todd Cowen[5], also concurred with. Dr. Stokes further opined that Mrs. Simon would be limited to alternative occupations that were sedentary in nature, such as an office setting, that would accommodate the restrictions Dr. Miranne prescribed.

If the jury was clearly wrong in awarding no damages for that item, then a reviewing court may only increase the award to the lowest amount which is reasonably within the court's discretion under the principles enunciated in *Coco v. Winston Industries, Inc*., 341 So.2d 332 (La.1977*). Ryan v. Zurich American Ins. Co*., 07-2312 (La. 7/1/08) 988 So.2d 214; citing *Hobgood v. Aucoin*, 574 So.2d 344 (La.1990). Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. *Williams v. Walgreens Louisiana Co., Inc*., 15-610 (La. 6/1/15); 171 So.3d 262, and *writ denied sub nom. Williams v. Walgreens Louisiana Co., Inc*., 15-613 (La. 6/1/15); 171 So.3d 262. The theory is that the injury has deprived the plaintiff of a capacity he would have been entitled to enjoy even though he never profited from it monetarily. *Id*. citing *Folse v. Fakouri*, 371 So.2d 1120, 1124 (La.1979).

At trial, Mrs. Simon introduced her W-2 statements and testified that her annual income in 2012 was $63,820.46, income earned prior to the collision at issue. She further testified that her annual income in 2013 was $47,320.21 and in 2014 was $31,633.55, after the subject collision. Dr. Rice determined that Mrs. Simon had 13.87 years remaining of her work-life expectancy, 34.2 years' life-expectancy for a 49-year old woman, and that her pre-injury earning capacity would be $101,380.00 and her post-injury earning capacity would be $32,323.20. Based on her $63,820.46

---

[4] Dr. Martinez did not assign any restrictions to Mrs. Simon for her lumbar injury. However, he did agree to the recommendations and restrictions outlined by Dr. Cowen.

[5] Dr. Todd Cowen is a physiatrist, physical medicine and rehabilitation specialist, who also treated Mrs. Simon after the February 2013 accident solely for her hip injury.

per year pre-accident earnings and her 13.87 years of work-life expectancy, Mrs. Simon will lose $208,050.00 in future earnings considering her post-accident earnings of $47,320.21. Accordingly, I would amend the judgment to award plaintiff $207,849.78, as the present value of this award.

| KIM D. SIMON | NO. 20-CA-156 |
|---|---|
| VERSUS | FIFTH CIRCUIT |
| AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, AND SHANNON D. SINGLETON | COURT OF APPEAL |
| | STATE OF LOUISIANA |

**JOHNSON, J., CONCURS, IN PART, AND DISSENTS, IN PART, FOR**

**THE REASONS ASSIGNED BY JUDGE WICKER**

KIM D. SIMON

VERSUS

AUTOMOTIVE CLUB INTER-
INSURANCE EXCHANGE,
STATE FARM, AND SINGLETON

No. 20-CA-156

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

## WINDHORST, J., DISSENTS IN PART

I respectfully disagree with the majority, and would affirm the jury's verdict and the trial court's denial of plaintiff's motion for JNOV. Based on the evidence in the record, I cannot conclude that the jury was manifestly erroneous or clearly wrong, and that there was no reasonable basis in evidence for the jury's award of general damages of $35,000.00 for past, present, and future pain and suffering, and that this award should be increased to $200,000.00.

The rationale of the majority opinion is that the award of general damages is so inconsistent with the award of special damages for medical expenses as to be abusively low. Considering the evidence admitted at trial, I disagree, and believe that whether we agree or not with the jury's award of general damages, the evidence provides many facts and expert opinions which support the jury's award.

### Requirements for Amendment of Jury Award on Appeal

A jury or trier of fact may refuse to award general damages after awarding special damages for medical expenses. A refusal to award general damages is not inconsistent with an award of medical expenses. Wainwright v. Fontenot, 00–492 (La. 10/17/00), 774 So.2d 70; Guillory v. Lee, 09–75 (La. 06/26/09), 16 So.3d 1104; Bouquet v. Wal-Mart Stores, Inc., 08–309 (La. 04/04/08), 979 So.2d 456; Coleman v. United Fire Ins. Co., 571 So.2d 213 (La. App. 3 Cir. 1990). In order to amend a trial court's award of damages, the appellate court must find no reasonable basis for the trial court's factual conclusions, and that the award is clearly wrong. Guillory, supra.

1

An appellate court may disturb a damages award only after an articulated analysis of the facts reveals an abuse of discretion. Bouquet, 979 So.2d at 459. Only after such an analysis and a finding of abuse of discretion may an appellate court resort to a comparison of damage awards in other apparently similar cases. Id.

It is well settled that vast discretion is accorded to the trier of fact in fixing general damage awards. La. C.C. art. 2324.1; Duncan v. Kansas City Southern Railway Co., 00-66 (La. 10/30/00), 773 So.2d 670, 682. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Reasonable persons frequently disagree about the measure of general damages in a particular case. Id. A reviewing court might well disagree with the amount of the award fixed by the jury, but it is not entitled to substitute its opinion for that of the trier of fact. Griffin v. Kmart Corp., 00-1334 (La. App. 5 Cir. 11/28/00), 776 So.2d 1226, 1233, citing Spillers v. Montgomery Ward & Co., Inc., 294 So.2d 803, 809 (La. 1974). Thus, the role of the appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn, 623 So.2d at 1261.

In a personal injury case, the plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. Stoll v. Allstate Ins. Co., 11-1006 (La. App. 5 Cir. 05/08/12), 95 So.3d 1089, 1095. The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Stoll, 95 So.3d at 1095, citing Powell v. Chabanais Concrete Pumping, Inc., 11-408 (La. App. 5 Cir. 12/28/11), 82 So.3d 548, 558; Mart v. Hill, 505 So.2d 1120, 1128 (La. 1987). Whether an accident caused a person's injuries is a question of fact that should not

2

be reversed on appeal absent manifest error.  Martin v. East Jefferson General Hosp., 582 So.2d 1272, 1276 (La. 1991).

In reviewing a trial court's findings of fact, appellate courts employ a "manifest error" or "clearly wrong" standard of review.  Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989); Guillory, supra; Arabie v. CITGO Petroleum, 10-2605 (La. 03/13/12), 89 So.3d 307, 312; Antill v. State Farm Insurance Co., 20-131 (La. App. 5 Cir. 12/02/20), 2020 WL 705302.  An appellate court may not set aside a trier of fact's finding in the absence of manifest error.  Rosell, supra.  When there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous.  Rosell, supra; Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La. 1993).

**Judgment notwithstanding the verdict ("JNOV")**

JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict.  Davis v. Wal-Mart Stores, Inc., 00-445 (La. 11/28/00), 774 So.2d 84, 89; Joseph v. Broussard Rice Mill, Inc., 00-628 (La. 10/30/00), 772 So.2d 94, 99.  The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, not merely when there is a preponderance of evidence for the mover.  Davis, 774 So.2d at 89; Joseph, 772 So.2d at 99.  In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.  Davis, 774 So.2d at 89; Joseph, 772 So.2d at 99.  If the trial court concludes that a JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must then determine what is the proper amount of damages to be awarded.  Anderson v. New Orleans Public Service,

583 So.2d 829, 833 (La. 1991). In making this determination, the trial court is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded that court. Id.; Coco; 341 So.2d at 335.

The standard of review for a JNOV is a two-part inquiry. First, using the same criteria the trial court uses in deciding whether to grant a JNOV, the appellate court must determine if the trial court erred. Davis, 774 So.2d at 89. After determining that the trial court correctly applied the standard of review as to the jury verdict, an appellate court reviews the JNOV using the manifest error standard of review. Id. If reasonable people could have arrived at the same verdict, given the evidence presented to the jury, then a JNOV is improper. Anderson v. New Orleans Pub. Serv., Inc., 583 So.2d 829 (La. 1991).

**Reasonable Bases for the Jury's Award and Denial of JNOV**

There was a stipulation to liability. Ms. Simon therefore had the burden of proving that the complained-of injuries to her lower back and hip were causally related to the 2013 accident. The following evidence was elicited at trial.

Photographs admitted into evidence show no damage whatsoever to either vehicle, and Ms. Simon admitted that photographs of her SUV vehicle (the Sequoia) showed no damage and needed no repair. She also testified that her body did not strike anything in the vehicle, and that she did not know whether her body moved from the impact. Photographs likewise show no damage to the front bumper of Ms. Singleton's SUV vehicle (the Yukon). [Defendants' Exhibit B-16]

Ms. Simon also testified that she was in a catastrophic automobile accident in 2011, in which she sustained serious injuries to her neck and back when she was rear-ended by a vehicle travelling at approximately 50 miles per hour. She further testified at trial that she continued to have significant problems with her neck and headaches, but that her back problems were resolved prior to the 2013 accident. She

4

admitted that the 2011 accident was "way more serious, way more severe" in regards to force of impact and property damage to her vehicle. She further admitted that her 2011 accident caused her severe pain and disability and affected her life, including immediately prior to the 2013 accident. Ms. Simon testified that the 2011 accident impaired her ability to play sports, do housework, work full-time in her job, sleep, and affected her relationship with her husband.

Ms. Simon also testified extensively on cross-examination that she was able to travel and take several vacations locally, in-state, out-of-state, and internationally after the 2013 accident, despite her alleged pain and suffering. According to her testimony, Ms. Simon went on trips to:

- Tampa, Florida four times – 9 to 9.5-hour drive; went to the beach, and to Busch Gardens each time;
- Disneyworld;
- Biloxi;
- France – the trip included Paris and Versailles, but Ms. Simon testified that she "did not know all of the places"; and
- Italy (Venice and Rome), during which she did a lot of walking and wore a light "summer backpack."

Ms. Singleton, the driver of the vehicle that rear-ended Ms. Simon, testified that she was driving at a slow speed, the impact was a "tap," the incident did not result in damage to Ms. Simon's vehicle, and Ms. Simon did not appear to be in any kind of pain after the incident.

Dr. Ronald Fijalkowski, a biomedical/biomechanical engineer, testified that the 2013 accident was a minor event having calculated a maximum Delta-V of less than 10 miles per hour. He testified that there was "no real indication of any significant individual crush or indentation" to Ms. Simon's vehicle. Dr. Fijalkowski further testified that the force Ms. Simon would have sustained on her body is "really less than what she would have experienced on an everyday basis" doing such activities as standing, walking, or walking down flight of stairs.

Dr. Monroe Laborde, an expert in the fields of orthopedics and orthopedic biomechanics, testified that it was "highly unlikely" that the 2013 accident caused Ms. Simon's back injuries. He also testified that based on the forces calculated by Dr. Fijalkowski, there was no potential for any significant injury to Ms. Simon's lower back and hip and it was highly unlikely the 2013 accident caused any injuries other than soft tissue injuries that would have resolved within six weeks. Dr. Laborde also testified that Ms. Simon's lower back and hip injuries were caused by degenerative conditions predating the accident, and that Ms. Simon at most could have sustained temporary soft tissue injuries to her neck and back as a result of the accident that would have resolved within six weeks.

The jury concluded that Ms. Simon was entitled to general damages in the amount of $35,000.00. Given the conflicting medical testimony, the evidence showing no damage to Ms. Simon's vehicle, Ms. Simon's testimony that she was able to travel extensively after this accident, and much expert testimony that cast doubt on the amount of pain and suffering, I cannot conclude that the jury's award of general damages in the amount of $35,000.00 was abusively low, manifestly erroneous or clearly wrong. There is sufficient testimony and other evidence on which the jury could have reasonably based its award of $35,000.00, as opposed to a greater amount. Considering her vacations and activities, a reasonable trier of fact could conclude that her pain and suffering was not severe. When there are two permissible views of the evidence, as is the case in the instant matter, the fact finder's choice between them cannot be manifestly erroneous. Even if we would weigh and resolve conflicting evidence differently, the jury did not, and this court should not substitute its judgment for that of the jury.

The record of the trial is replete with testimony and other evidence which, under the guidelines of our jurisprudence, supports the jury's finding that Ms.

Simon's pain and suffering was adequately compensated by the award given, and does not justify an award of almost six times as much.

Accordingly, I would affirm the jury's verdict in all respects, as well as the trial court's denial of the motion

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 13, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-156

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
GEORGE B. RECILE (APPELLANT)          PRESTON L. HAYES (APPELLANT)          WALTER R. WOODRUFF, JR.
MATTHEW A. MANG (APPELLEE)                                                 (APPELLANT)

### MAILED

JOSEPH M. MESSINA (APPELLEE)          TROY R. KELLER (APPELLANT)          BARRY W. SARTIN, JR. (APPELLANT)
VICTORIA H. FABRE (APPELLEE)          ATTORNEY AT LAW                     ATTORNEY AT LAW
ATTORNEYS AT LAW                      917 NORTH CAUSEWAY BOULEVARD        ONE GALLERIA BOULEVARD
400 POYDRAS STREET                    METAIRIE, LA 70001                  SUITE 1100
SUITE 2300                                                               METAIRIE, LA 70001
NEW ORLEANS, LA 70130